STATE OF MISSOURI at the Relation of LOUIS WORTH, L. R. CRAMER, GEORGE HUSKISSON, A. C. HULTZ, H. O. LILLER, P. E. DORNER, CHARLES LONG, ARTHUR HAWKINS, C. D. HAWKINS, E. L. HAWKINS, L. T. HAWKINS, YUEN HART and G. A. DORNER, Relators, v. HUGH BOWMAN, LESLIE WHITE, WILLIAM STARK, HENRY MYERS, ELY LYONS and EARL OGLE, Composing the Board of Education of the Midland Consolidated School District, No. 1, of Carroll County.—52 S. W. (2d) 848.

Court en Banc, September 2, 1932.

1226

*Burns Stroder, Smith B. Ellis* and *Franken & Timmons* for relators.

*Eugene A. Farris* and *George W. Crowley* for respondents.

FRANK, J.—Original proceedings in mandamus to compel the board of directors of Consolidated School District Number One in Carroll County, to maintain an approved high school of either the first, second or third class in said district. Our alternative writ issued. Respondents made return to the writ, to which relators replied. Upon motion this court appointed Honorable Henry McKay Cary as commissioner to take testimony and report his findings of fact and conclusions of law. The report of the commissioner and relators' exceptions thereto have been filed and the case is here for final disposition.

Our commissioner made the following finding of facts:

"In view of the pleadings and issues presented, I find the following facts from the evidence introduced in this cause.

"First, that the assessed valuation for 1929 of the entire Midland Consolidated School District No. 1 was $970,855; that the total revenue for school purposes for that year (1929-30) was $5,227.38, $1,318.67 of that amount being received from the county treasurer from the combined total of the state and county school, railroad, teachers' and incidental, township interest and delinquent tax funds. That the assessed valuation of all personal and real property in the district for 1930 is $898,324 being an amount considerably lower than that of 1929; that the assessed valuation of said district has decreased each year since 1927 (no evidence prior to that date) with a resulting decrease of the school revenue to be raised by direct levy. There is no evidence as to the amount to be received from the county treasurer for the year 1930.

"Second, that there are about 100 children of grade school age in the entire district and about 25 of high school age.

"Third, that the present high school teacher employed by the board of directors does not have sufficient college hours to meet the requirements established by the State Superintendent of Schools for an approved teacher in a classified high school, although the evi-

dence discloses that she has in the aggregate about 60 hours of college credit. That the teachers in the third class high schools approved or classified by the State Department of Education as such, should meet the following requirements: fifteen hours of college English, ten hours of college mathematics, fifteen hours of social studies, fifteen hours of science, and fifteen hours in agriculture. That the present high school teacher has a first grade certificate giving her the right to teach in the public schools of this State. That the State Superintendent of Schools or his deputies have never checked the present teacher's credits to determine just what work taught by her might be approved because the present high school does not come up to certain other requirements necessary for classification as an approved high school.

"Fourth, that the library and other equipment provided for said high school is not such as to meet the requirements for an approved high school.

"Fifth, that for the last three years there has not been maintained in said consolidated school district an approved high school of the first, second or third class, in fact it is admitted by respondents that the high school now conducted in Midland Consolidated School District No. 1 is not a classified high school and has not been approved by the State Department of Education or State Superintendent of Schools.

"Sixth, that there is being taught in said high school courses of study in English, history, mathematics and science, said courses of study being the ones set out for approved schools in Section 11337, Revised Statutes 1919 (Section 9447, R. S. 1929).

"Seventh, that from the evidence relators fail to show that the revenues of said district are sufficient to maintain and support an approved high school of the first, second, or third class, and provide facilities for the same, even if the law made such action their mandatory duty."

Relators filed the following exceptions to the commissioner's findings of facts:

"Come now relators in the above entitled cause by their attorneys of record and except to the report of the Honorable Henry McKay Cary, commissioner appointed by this court, which said report was filed herein on April 3, 1931, said exceptions being to the finding of fact and conclusion of law by said commissioner for the following reasons, to-wit:

"1. Relators except to the findings of the commissioner that there was insufficient funds to maintain an accredited school in Consolidated School District Number One of Carroll County, Missouri.

"2. Relators except to the finding that respondents herein as the board of education of said consolidated district employed a teacher qualified to teach in an accredited high school.

"3. Relators except to the conclusion of law announced by the commissioner that it is not the mandatory duty of the board of educator of consolidated rural school districts in Missouri and of the Board of Directors of Consolidated School District Number One of Carroll County, Missouri, to teach the subjects required to be taught in an accredited first, second or third class high school, and employ a teacher qualified to teach in a first, second or third class high school.

"4. Relators except to the conclusion of law of said commissioner that it is not the mandatory duty of the Board of Directors of Consolidated School District Number One of Carroll County, Missouri, to maintain an accredited or classified high school."

The commissioner's conclusion of law relative to the question of the sufficiency of the funds of the district to maintain an approved high school of either the first, second or third class reads as follows:

"Under this state of facts it appears that the relators are not entitled to the relief prayed for and granted in the alternative writ. Before the respondents can be compelled to maintain a high school of either the first, second or third class, it must be shown that all the conditions exist which are necessary to create such a duty. [State ex rel. Miller et al. v. Board of Education of Consolidated School District No. 1 of Holt County (Mo. App.), 21 S. W. (2d) 645; 38 C. J. p. 732 (Art. 333); 38 C. J. p. 556 (Art. 28).] Under these authorities and numerous others, it appears that the duty is cast upon relators to clearly show that there are sufficient funds on hand or available to the respondent directors to provide for a first, second or third class high school before they can be compelled by mandamus to perform such act.

"This question of the funds of the district demands a somewhat detailed discussion of the evidence. Since this action was started the school year for 1929-30 closed. The testimony discloses that for the school year of 1929-30, $5,227.38 was available for the purpose of maintaining the four elementary schools and the high school in this district. The evidence further shows that the school term for 1929-30 only run for a total time of six months, with the exception that two grade teachers continued one week more than that time, and that only a balance of $22.24 remained on hand after the term closed in the spring of 1930. The testimony of the district clerk (page 167 of the original transcript), sets out in detail the expenditures of the district. From this testimony it appears that $3,290 was spent for teachers and $1,915.14 for incidentals, thus leaving the resulting bal-

ance of $22.24. The clerk also testified that the district was indebted at the end of the year for a part of the coal bill as well as having other outstanding obligations. Some of these expenditures are of such a nature that they will not occur every year but none appear false or in any ways fraudulent. When we turn to the present school year of 1930-31 the evidence is not complete as to the total revenue obtainable for the year but most of the facts essential for a close estimate of the same are present. One of the chief factors influencing the 1930 revenue is the decrease in value of the total assessed valuation of the district which is only $898,324 for 1930 as compared with $970,885 for 1929. Upon such an assessed total valuation, the maximum amount that could be raised for school purposes, thru the school tax alone, under the present 40¢ levy on the $100 valuation is $3,593.30, which amount less the collector's commission of 2½ per cent leaves $3,503.47. This amount could be raised only under the most favorable conditions, that is, that there are no delinquent taxes on either the land or personalty in the district. In view of the fact that the district has received money from the county treasurer for at least the last four years for delinquent taxes paid into his office, a total collection appears improbable. In 1926 this district received from the county treasurer from the combined State and county school fund, railroad, teachers and incidental fund, township interest fund, and the delinquent tax fund, the total amount of $1,080.16; in 1929 the total amount from the same funds was $1,106.23; in 1928 the total amount of $1,387.46; and in 1929 the total amount of $1,321.67; the amount for 1930 is not in evidence. The average amount for the four years set out above is $1,223.88. The greatest amount received from the county treasurer in any one year is $1,387.46 and this amount plus $3,503.47, the highest possible amount to be raised on all the taxable property in the district by a 40¢ levy, gives a total of $4,890.93 as a most favorable estimate of the money available to the district for school purposes in 1930-31. The evidence shows that the four elementary teachers are being paid $100 per month and the high school teacher $140 per month. This makes a total of $4,320 to be expended for teachers' salaries for an eight months term. There is no allegation on the part of relators that the respondents are paying the grade school teachers too high a salary although there was evidence offered to prove that point. There is no evidence to the effect that any of the grade school teachers are unsatisfactory or not worth what they are paid in view of the fact that the county superintendent of schools testified that the average salary of grade teachers was approximately $80 and materially higher in some places in the county, a clear abuse of the directors' discretion is not shown. The evidence shows that the high school teacher in this district has

received $140 or more ever since the district was organized, which occurred long before the present board was elected or had anything to do with the school. The uncontradicted evidence shows that the coal bill for all five schools runs in the neighborhood of $300 per year and that the rent for the high school building is $200 a term. The district clerk testified that $150 per year was necessary to take care of the small incidental expenses of the district, exclusive of the major repairs for all of the school buildings from year to year. There is evidence that $1,000 to $1,200 is necessary to take care of all the incidental expenses of the district from year to year, but this amount appears high. It does appear however that about $4,970 is necessary to pay the teachers' salaries and maintain the schools in their present status without allowing for extensive repairs and up-keep. Even when meeting these necessary expenditures there is no provision made for paying the clerk some compensation or to take care of the debts of the district, regarding which the evidence is rather unsatisfactory as to the exact amount, although uncontradicted. The evidence further shows that before a classified school of any class can be maintained that there would have to be additional expenditures for laboratory equipment and for additional library books and cases as the evidence clearly shows that the present equipment and library is inadequate for the maintaining of an approved school. Most of the original equipment and a part of the library, costing $987.76 when the district was originally organized has disappeared, been used up or otherwise destroyed. An expenditure for some of these things would be absolutely necessary before the school could be approved as even a third class school.

"By the statute the duty is placed on the directors to maintain the elementary schools in the district for a period of eight months. [Section 11265, R. S. 1919, as amended First Extra Session Laws 1921, page 184 (Section 9359, R. S. 1929).] Thus under the law the high school could not be maintained alone at the expense of the curtailment of the terms of the elementary schools in the district. Under the provisions of Section 11337, R. S. 1919 (Section 9447, R. S. 1929) no high school can be approved unless there is a school term of at least eight months. Being bound by the law to maintain the elementary schools for eight months also, there does not appear to be sufficient funds available to said district to maintain both types of schools in the district for eight months, take care of all the necessary expenses and debts, and even start to provide additional facilities for an approved high school. Relators in their suggestions have mentioned that thru the failure of the respondents to maintain an approved high school in the district that $1,460 in State aid money has been lost to the district. Your commissioner is unable to see the

basis of this contention. Under Section 11264, R. S. 1919, as Amended Laws 1925, p. 330 (Section 9358, R. S. 1929), special State aid is not granted unless at least a rate of 65¢ on the $100 valuation is run by the district for teachers' and incidental purpose. [State ex rel. Robertson et al. v. Lee, 315 Mo. 817, 287 S. W. 37.] Under Section 11265, R. S. 1919, as Amended Laws 1921, 1st Extra. Session, p. 184 (Section 9359, R. S. 1929), the district must also run a 65¢ rate as well as meet other requirements before State aid is forthcoming. State aid is not available to this district and would not be even if an approved high school was maintained under Section 11295, R. S. 1919 (Section 9399, R. S. 1929), for the reason that the maximum levy provided by law has never been run in this district, cf. Constitution of Missouri, Article X, Section 11, and also because an average daily attendance of fifteen scholars has not existed for the last year. Neither does Section 11296, R. S. 1919 (Section 9400, R. S. 1929), apply to this district. There is no contention that the district has ever received aid under the provisions of Article 6 of Chapter 57, R. S. 1929, dealing with vocational agriculture and vocational rehabilitation. There is evidence, which is undisputed that twice within the last two years that the proposition of increasing the tax levy above the 40¢ rate on the $100 valuation has been submitted by the respondent directors to the voters of the district and that both times this proposition has been defeated, the last time badly. If the district did increase its tax levy sufficiently and other provisions were met, then special State aid might be obtained under some of the sections mentioned above, but such an increase appears improbable. Under Section 11264, R. S. 1919, special State aid was once granted according to the number of square acres in the district, but this section was amended in 1925 (and now appears as Section 9368, R. S. 1929) quite some time before this action was started.''

Relators' brief presents two questions, (1) that the commissioner erred in finding that the district did not have sufficient funds to maintain an approved high school, and (2) that the commissioner erred in holding that Sections 9947 and 9948, Revised Statutes 1929, does not make it the mandatory duty of the Board of Education of a consolidated school district to maintain such a high school as will be approved by the State Superintendent of Schools.

■ ■ ■ Our commissioner found, after hearing the evidence, that the district did not have sufficient revenue to support and maintain an approved high school. Relators contend that the commissioner erred in making this finding, but they do not point to any facts in support of their contention. Section 1060, Revised Statutes 1929, provides that the court shall be furnished with a clear and concise statement of the case. Our Rule 15 provides that appellants' brief shall contain a fair and concise statement of the facts of the case

without reiteration, statement of law or argument. Our Rule 33 provides that on final hearing of original writs printed abstracts and briefs shall be filed in all respects as is required in appeals and writs of error in ordinary cases. The statement in this case does not comply with the statute and the rules of this court. It does not contain any facts relating to the district's financial ability to maintain an approved high school. Relators content themselves by saying in their statement that the evidence clearly shows there was sufficient funds on hand to maintain such a school. The evidence covers more than 450 pages of the record. Litigants should not be permitted figuratively to throw a voluminous record in the lap of the court and expect the court to wade through its printed pages for the purpose of determining what the facts are. Both the statute and our rules place that burden upon the litigants. We would be justified in refusing to consider relators' contention that the commissioner erred in finding that the district did not have sufficient revenue to maintain an accredited high school, but we have examined the record and find that the evidence relating to the district's financial condition is correctly stated in the commissioner's conclusions of law heretofore set out in this opinion, and it is our judgment that the evidence supports the commissioner's findings of fact on this issue. ▉ It is settled law that mandamus will not go to compel a board of education to maintain an approved high school where it is shown that the district does not have on hand or available sufficient funds to do so. [Miller et al. v. Board of Education of Consolidated District No. 1 of Holt County, 21 S. W. (2d) 645, 648; 38 C. J. 556; 38 C. J. 752.] Our commissioner so held and we approve that holding. As this conclusion must result in a denial of the peremptory writ of mandamus, it is not necessary to determine other questions raised by relators.

For the reasons stated, the alternative writ of mandamus heretofore issued is quashed and the peremptory writ is denied. All concur, except *Atwood, C. J.,* not sitting.