MERCANTILE TRUST COMPANY v. FRANK W. SCHRAMM et al., President and Members of Board of Equalization of City of St. Louis.

In Banc, December 30, 1916.

1. **TAXATION**: Assessment: Changed by City Board. The Board of Equalization of the city of St. Louis has no power to place a valuation upon property within said city which is different from the valuation placed by the State Board of Equalization upon all property of the same kind and class throughout the State. Where the city assessor valued corporate company bank stock within the city of St. Louis at $65,738,690, and the State Board of Equalization equalized the assessments of banks throughout the State and fixed the valuation at fifty per cent of the aggregate returned by the various assessors, thereby placing a valuation of $32,688,450 on the stock of banks in St. Louis, the Board of Equalization of that city has no power to place the aggregate assessment against said banks at $46,017,083, or at seventy per cent of the original valuation certified by the assessor.

2. ———: **Uniformity.** The primary and dominant idea of the Constitution is that all property of the same class and value shall bear the same burden. Uniformity of burden is the thing that it attempts to accomplish. That principle requires that all property of the same class within the territorial limits of the authority levying the tax shall be taxed at the same rate. A State tax must be apportioned uniformly throughout the State.

3. ———: ———: **One Standard of Valuation.** There is no provision of law authorizing different standards of valuation in different

counties. The law clearly and expressly requires that for the purpose of valuation all property in the State, regardless of where situate, shall be valued by the same standard.

4. ———: ———: **Power of State Board: Increase and Reduction of Values: By Classes.** In order that all property throughout the State may be assessed at its true value, the State Board of Equalization is given power to adjust and equalize the value of property among the several counties, and to do that it is required to add to the valuation of each class of property of each county which it believes is below its real value such a per cent as will bring its valuation to its true value, and to deduct from the valuation of each class of property of each county which it believes is valued above its real value such a per cent as will reduce the valuation to the true value. The State Board of Equalization was created primarily to secure and guarantee uniformity and equality in the burdens of taxation throughout the State.

5. ———: ———: **Increase by County Board.** A county board of equalization cannot either reduce or increase the valuation of a class of property within the county fixed by the State Board of Equalization.

6. ———: ———: ———: **Section 11403.** The proviso in Sec. 11403, R. S. 1909, declaring "that such board shall not reduce the valuation of the real or personal property of a county below the value thereof as fixed by the State Board of Equalization," does not authorize the county board to change and increase the valuation fixed by the State board on banking corporations, but was an admonition to the county board that in equalizing one piece of property with another they should so proceed that the county's aggregate would not fall below the value fixed by the state board; it was intended to apply to the relations between the state board and local boards. It does not permit a county board to increase the assessment upon a certain class of property fixed by the state board.

7. ———: ———: **Unconstitutional Act: Banks.** The General Assembly could not in terms provide that the property of banks in the city of St. Louis should be assessed at a value different from the property of banks in other parts of the State, nor could the State Board of Equalization assess the property of banks in St. Louis at a value different from that placed upon banks in other parts of the State; and what cannot be done directly cannot be done through indirection—by a county board, for instance.

*Certiorari.*

Record quashed.

*Judson, Green & Henry* for petitioner.

(1) Under the Constitution and statutes, the valuation by the State Board of Equalization of any class of property is final and controlling and *a fortiori* is binding upon the local assessing authorities. R. S. 1909, secs. 11403, 11408, 11412; State ex rel v. Vaile, 122 Mo. 33; State ex rel. v. Adams, 172 Mo. 1. (2) The contention that the valuation at "true value" by the state board, prevents the lowering, but does not prevent the advance, of such valuation by a local board, is wholly untenable, and the statute so construed would deny the equal protection of the laws. R. S. 1909, sec. 11402. (3) The control by state board of local boards and assessors is uniformly sustained by the judicial precedents and authorities. Raymong v. Chicago Union T. Co., 207 U. S. 35; Consolidated 'Min. Co. v. Arizona, 206 U. S. 474; Hacker v. Howe, 72 Neb. 385; Tax Commissioners v. Quinn, 125 Mich. 128; People v. Supervisors, 59 Cal. 321; 37 Cyc. 1108; Russell v. Carlyle, 8 S. W. 14; 1 Cooley on Taxation (3 Ed.), pp. 784-786; State ex rel. v. Vaile, 122 Mo. 33. (4) Classification of property for taxation is expressly recognized and authorized by the Constitution of Missouri. Constitution, art. 10, sec. 3; R. S. 1909, sec. 11402; Masonic Aid Assn. v. Waddill, 138 Mo. 628. (5) Classification of banking corporations was just and reasonable. The court will take judicial notice of the conduct and public relation of banking corporations. Henry County v. Salmon, 201 Mo. 136; Tel. Co. v. Tel. Co., 236 Mo. 115; State ex rel. v. McQuillan, 246 Mo. 535. (a) Banking corporations are *quasi-public.* Nothing is or can be concealed. (b) They are the only class of property wherein the names and holdings of the taxpayers themselves are submitted to the state board. (c) A wise public policy is subserved in that banking corporations of different towns compete, as the public interest requires. (d) The separate classification of banks for taxation is made necessary by the peculiar relation of the national banks to the state banks under the Federal law. (6) The order of the St. Louis Board, making valuation of banking property

higher than property of the same class in the State, was an unlawful discrimination. Constitution, art. 10, sec. 3; Masonic Aid Assn. v. Waddill, 138 Mo. 628; St. Louis v. Spiegel, 75 Mo. 145; St. Louis v. Bowler, 94 Mo. 630.

*Charles H. Daues* and *Truman P. Young* for respondents.

(1) Under the statutes the State Board of Equalization fixes a minimum of value of property in each county.; it does not fix the exact value. This is true whether we consider all the property in a county or any one of the various classes of property defined by Sec. 11412, R. S. 1909. Secs. 11403, 11414, R. S. 1909. This purpose is apparent throughout the provisions of articles 3 and 4, chapter 117, being sections 11402 to 11414. Mining Co. v. Arizona, 206 U. S. 474. (2) The assessment of the petitioners did not violate the constitutional provisions of the State requiring uniformity of taxation. We have found no cases presenting a state of facts analogous to that presented here. We cite, however, the following as bearing rather remotely upon the meaning of the requirement of uniformity: State ex rel. v. Field, 119 Mo. 613; State v. Bengsch, 170 Mo. 81; State v. Switzler, 143 Mo. 289; Elting v. Hickman, 172 Mo. 234; State v. Moody,. 202 Mo. 120; State ex rel. v. Henderson, 160 Mo. 190; Kansas City v. Shipple, 136 Mo. 475.

REVELLE, J.—Respondents are members of the St. Louis Board of Equalization and as such have the same general power of reviewing local assessments in the city of St. Louis as have county boards of equalization in their respective counties.

It appears from the record that the assessor of the city of St. Louis, as required by section 11357, submitted to the State Board of Equalization an abstract of the taxable property in the city of St. Louis and its valuation, including, among other things, "corporate company's bank stock," at a total valuation of that

class of property in the city of St. Louis of $65,738,690. The state board, having received such abstracts and reports, proceeded to equalize the assessments of banks throughout the State and fixed such valuation at fifty per cent. of the aggregate returned by the various assessors, including that of the city of St. Louis. This assessment was certified by the State Auditor to the city assessor of St. Louis and the assessors of the counties, being dated April 1, 1916, and shows that the aggregate valuation of the stock in banks in the city of St. Louis was placed at $32,688,450, or fifty per cent. of the aggregate returned by the city assessor. This was the uniform per cent. of the returned aggregates made by the various assessors of the State. Thereafter respondents, as members of the city board of equalization, placed the aggregate assessment against such banks at $46,017,083, which was exactly seventy per cent. of the original valuation certified to the state board by the city assessor, or twenty per cent. more than the valuation fixed by the state board.

Several cases involving the question here presented are pending, but by stipulation they are submitted on one record, all involving the same question. There is no dispute as to the controlling facts.

Our law provides a complete plan and scheme for the assessment and collection of taxes, an adequate means by which the burden, primarily borne by the State and its sub-divisions, is transferred to the citizen. The prime and dominant idea of the scheme is furnished by the Constitution and is that all property of the same class and value shall bear the same burden. While it is a matter of common experience that absolute equality in the imposition of taxes is not attainable, we nevertheless find an aim and intention on the part of our law-makers to approximate to the idea of absolute equality as closely as the nature of the subject and the necessities of practical administration will permit. It is the uniformity of *burden* that the principle of uniformity in taxation is intended to accomplish, and whatever tends to foil this incurs the law's wrath. Discrimination, by

whatever means induced, whether by different rates on the same values or the same rates on different values, seems within the inhibition.     The State being sub-divided, practical administration and the necessities of the case require that different rates be charged in different subdivisions in order to meet different local needs and conditions, and constitutional and statutory provisions for such different local rates are made.     The principle of uniformity, however, requires that all property of the same class within the territorial limits of the authority levying the tax be taxed at the same rate.     A State tax must be apportioned uniformly throughout the State;   a county tax throughout the county; and a municipal tax throughout the municipality. While provisions are made for different *rates* in different sub-divisions and for local purposes, no provisions are to be found anywhere which authorize different standards or bases of *valuation.*     It is evidently intended that the difference in the various local conditions shall be cared for by a difference in the *rate* and not otherwise.

The law clearly and expressly requires that for the purpose of valuation all property in the State, regardless of where situate, shall be dealt with in the same manner. For this purpose of valuation, the law decrees uniformity and one standard throughout the State, and this without any regard whatever to local needs or differences in local conditions, for it ordains that all property, wherever situate, shall be assessed at its *true value.* In order to effectuate this command a State Board of Equalization has been provided, and its arm of authority extended to all parts of the State.     It is a creature of the Constitution and by that instrument enjoined to adjust and equalize the *value* of property *among the several counties* of the State, and perform such other duties as may be prescribed by law. The law has prescribed, among other things, that this board shall equalize the valuation of each class of property among the respective counties in the following manner:

"First—It shall add to the valuation of each class

of property, real or personal, of each county which it believes to be valued below its real value in money such per centum as will increase the same in each case to its true value.

"Second—It shall deduct from the valuation of each class of the property, real or personal, of each county which it believes to be valued above its real value in money such per centum as will reduce the same in each case to its true value." [R. S. 1909, sec. 11412.]

It is these provisions, in the light of those *in pari materia,* that we are called upon to construe. It is not questioned that, under the provisions of this section not quoted, the State Board of Equalization can equalize according to *classes* as it did in the instant matter. This power was expressly confirmed by the amendment of 1899, prior to which time its power was limited to equalizing among the different counties and not between classes. [State ex rel. v. Vaile, 122 Mo. 33.] Respondents concede that under this section the state board has the exclusive power to determine the *minimum* taxable value, and that no county or city board can *reduce* such minimum, but urge that such local boards can *increase* the same and make the aggregate value of any class greater, if they deem proper. In this they plant themselves on what is contained in sections 11403 and 11414, Revised Statutes 1909. Section 11403, after providing that county boards shall equalize the valuation of all taxable property within their respective counties so that the same may be entered on the tax books at its true value, contains the following:

"Provided that such board shall not reduce the valuation of the real or personal property of the county below the value thereof as fixed by said State Board of Equalization."

Section 11414 provides:

"And it shall be the duty of the State Auditor to require of clerks of the several county courts of this State to keep up the aggregate valuation of real and personal property in their respective counties for those years in which no State Board of Equalization is held

to the aggregate amount fixed by the last State Board of Equalization.''

Recognizing that the object to be accomplished by a statute is of prime consideration in its construction, respondents say that the chief purpose of the creation and maintenance of the State Board of Equalization was and is to enable the State to make sure of the collection of at least as much from each county as it deems just. This argument, when analyzed, minimizes the citizen and maximizes the government, and this is antagonistic to our governmental system in which the people are the sovereigns and the government but their servant. The State is more concerned with the welfare and equality of its citizens and in the promotion thereof than with the mere incidents to their accomplishment, such as is public money.

It must be borne in mind that state, county and municipal taxes are all based upon the same assessment and upon one and the same valuation. This is one reason for demanding equality and uniformity throughout the State in the matter of valuation. If property of the same class is assessed in one county at fifty per cent. of its value, and in another at seventy per cent. thereof, the State collects for its own use, as distinguished from what is collected for local purposes, a greater amount from a citizen in one of its parts than from another in a different part, although their property is of the same class and value and is receiving the same public benefits and protection. This produces favoritism and destroys the cherished principle of equality. Instead of the state board being primarily created for the purpose of exacting the State's pound of flesh, we are inclined toward the more beneficent view that it was to secure and guarantee uniformity and equality in the burdens which the maintenance of a state render necessary and which society imposes.

The construction contended for by respondents would break down this principle and destroy its benign purpose. It would place the State in the unenviable position of having to exact and receive from certain of its people

more than its authorized representatives had found and solemnly declared to be just, right and necessary—this because a state tax on the valuation in excess of that found by the state board to be true and just would be collected, and to this extent the tax would be not only unjust and unequal, but also, under the law, would be deemed unnecessary for public purposes.

The power of taxation has been jealously hedged about and limited to the public needs; it rests upon necessity and is accordingly restricted. In the absence of clear and express provisions we would not hold that any scheme of taxation was intended or permitted to collect more than was necessary for the public good. The rate fixed by the people and the valuation determined by the state board on the property designated in section 11357 decide the question of what is necessary.

This much is practically admitted by respondents through their concession that the state board alone can fix the minimum taxable value. Section 11414, supra, is of no aid to respondents since the mere reading thereof discloses that it is applicable only to cases and times when the state board failed to act; nor do we think that the proviso contained in section 11403, supra, can be consistently construed so as to authorize the local board to change and increase the valuation fixed by the state board on banking corporations. This proviso was enacted at the same time that the original statute authorizing the state board to equalize property among the several counties was passed. At that time, as heretofore stated, the state board dealt only with one county's assessment as compared with another county's, and not with classes as it has since 1899. The county boards under the original and present acts are authorized to equalize the value of each piece of property in their respective counties with other property so located.

When the proviso in question is considered in the light of all the laws relating to the subject and the purpose which they were intended to accomplish, we are of the opinion that it was but an admonition to the local boards that in equalizing one piece of property with

another they should so proceed that the county's aggregate would not fall below the value fixed by the State Board of Equalization, and that it was not intended to apply to the relations between the State and local boards.

As clearly indicating· that the functions of the local board are purely ministerial after the state board has acted, we find section 11408, which provides that when the report of the state board is not received at or during the session of the county board, the *county clerk* shall adjust the tax books according to such report when the same is received.· It could not be contended that the county clerk in such a case would have any authority to change the valuation fixed by the state board, and it is hardly reasonable to assume that the Legislature intended that the conclusiveness of the state board's action should depend upon whether its report was received at a particular time.

Section 11412 supra expressly authorizes the state board to not only increase the assessments made by the local authorities, but also empowers it in similar language to reduce the same to its true value. If its action in this respect were not held to be conclusive, clashes and conflicts would be inevitable and confusion and chaos would come out of what was intended for order.

Cases from other jurisdictions are cited, but they are of little value here, other than as tending to show that when a constitution provides for uniformity in taxation it is the general public policy, where the property located in different sections is assessed by different boards, to provide a superior board for equalization between them ˙and that the decision of such board is made final. In fact, it has been said that under such circumstances the constitutional requirements of uniformity impose on the State the duty of adequately providing for such equalization. [Railroad and Telephone Co. v. Board of Equalizers, 85 ꟷFed. 302.] We have no doubt that had the Legislature in terms undertaken to provide that the property of banking corpor-

ations in the city of St. Louis should be assessed at a value different from the property of banking corporations in other parts of the State, its action could not be sustained. We are equally well satisfied that had the State Board of Equalization undertaken to assess the property of banking corporations in the city of St. Louis at a value different from that placed on the banking corporations in other parts of the State, its action would likewise be invalid. That which cannot be done directly cannot be done through indirection, and if a method is provided which results in unjust discrimination, the result cannot be upheld. In Railroad & Telephone Co. v. Board of Equalizers, supra, it is said: "This is equally so whether such a result is due to erroneous action by the board or to defect in the legislation, in not requiring equalization, and furnishing the means whereby this might be made real and effective." In that case the court further said: "It may be as well to say in this connection that it is now established that the constitutional requirement of uniformity in taxation applies to the mode of assessment, as well as to the rate of levy, and the Constitution may be violated in a lack of just proportion in the value at which property is assessed for taxation quite as much as in the rate or percentage at which the tax is actually laid on the assessed value."

These observations are indulged in, not for the purpose of declaring any of the sections heretofore cited unconstitutional, but as throwing light upon the construction which should be given them. It is our opinion that the Legislature has attempted to provide a method calculated to secure constitutional uniformity and that our decisions should be toward upholding that method and end.

We are therefore of the opinion that the respondents have no authority to increase or change the value and amount certified to them by the state board and that their record should be quashed. It is so ordered. All concur, except *Bond, J.,* who dissents, and *Faris, J.,* not sitting.