352 S.W.2d 656 (1961)
In the Matter of the Assessment of: ST. JOSEPH LEAD COMPANY, a Corporation.
ST. FRANCOIS COUNTY, Missouri, School District of Flat River, Missouri, School District of Doe Run, Missouri, School District of Elvins, Missouri, and School District of Esther, Missouri, Respondents,
v.
STATE TAX COMMISSION of Missouri, James M. Robertson, John O. Williams, J. Ralph Hutchinson, Commissioners of the Missouri State Tax Commission, and St. Joseph Lead Company, Respondents, St. Joseph Lead Company, Appellant.
No. 48688.
Supreme Court of Missouri, Division No. 2.
December 11, 1961.
Motions for Rehearing or to Transfer Modify Opinion Denied January 8, 1962.
Opinion Modified Motion January 8, 1962.
*657 W. Oliver Rasch, Bonne Terre, John S. Marsalek, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for appellant, St. Joseph Lead Co.
Raymond R. Roberts, Pros. Atty., St. Francois County, Charles G. Hyler, Asst. Pros. Atty., St. Francois County, Farmington, Rush H. Limbaugh, Cape Girardeau, for respondents.
Motions for Rehearing or to Transfer to Court en Banc or to Modify Opinion Denied January 8, 1962.
Opinion Modified on Court's Own Motion January 8, 1962.
BARRETT, Commissioner.
This appeal by St. Joseph Lead Company involves the valuation of its property in St. Francois County for the purposes of taxation. In general the property consists of approximately 45,000 acres of land, known as "The Lead Belt," in which the company has both mineral and surface rights. The appellant's principal business in St. Francois County is the mining, processing and milling of lead and its by-products. In the several areas devoted to mining and milling ore, some of them for almost 100 years, there are all the vast installations and complicated machinery necessarily incident to these operations. The 45,000 acre area is comprised of hundreds of tracts of land acquired over the years and that not devoted to mining consists of farmland, some timberland, and some of it has been developed into business and residential property, and a part of all these properties or interests has been sold or leased with mineral rights reserved.
As of January 1, 1959, the assessor and, after applications for review, other taxing authorities of St. Francois County valued and assessed the St. Joseph Lead Company's property at $12,205,100.00. The company appealed to the State Tax Commission and on December 21, 1959, the commission reduced the assessment to $6,657,720.00 and the company immediately paid its taxes for that year based upon that valuation. In January 1960, St. Francois County and four school districts, proceeding under the Administrative Procedure and Review Act, filed a petition for review in the Circuit Court of St. Francois County and that court found that the State Tax Commission had abused its discretion in refusing to grant the county and the school districts a continuance and that its decision was "wholly unsupported by and (is) contrary to competent and substantial evidence upon the whole record." Whereupon the circuit court reversed the finding and order of the tax commission and fixed the assessed valuation of the lead company's property as it had been fixed by the St. Francois County Board of Equalization, at $12,205,100.00. The St. Joseph Lead Company has, of course, appealed to this court from that judgment.
*658 At the outset it should be noted that the appellant has briefed thirty-one separate points and in reply the respondents have cited long lists of cases, fifty-one under one point and thirty-one under another and so on. The record is long and the case as a whole extremely complex but at this stage of the proceeding some of these numerous points have indeed become minor if not irrelevant and some of the analogies the parties would draw from the cases dealing with common-law pleading and practice are apparent but not particularly helpful or persuasive. At this juncture questions concerning the sufficiency of petitions to the board of equalization, to the tax commission, or to the circuit court on review, notice to school districts and similar matters (May Department Stores Co. v. State Tax Commission (Mo.) 308 S.W.2d 748) only tend to confuse essential and meritorious problems. The numerous points, the lists of cases, the analogies and the record have all been dutifully considered with such understanding of several very technical and complex subjects as limited capacity and obviously limited technical knowledge permit. In this opinion only those matters deemed necessary to a disposition of the appeal and the exhaustion of this court's function will be considered in detail.
The appellant's first point is that the circuit court lacked jurisdiction to entertain the respondents' petition for review, therefore it is urged that the court erred in overruling its motions to dismiss the review petition. The principal reason asserted for this proposition is that since the State Tax Commission, on appeal from the county board of equalization, fixed the valuation and reduced the assessment the respondents, the county and school districts, are conclusively bound by the order and "had no right to a review of the decision." In part this argument appears to be particularly directed against the school districts who were permitted to intervene before the tax commission. But at this point in the proceeding this particular argument and the contention that the prosecuting attorney, "when (so) called upon," is charged with the duty "to represent the commission in any litigation which it may wish to institute or in which it may become involved in the discharge of its duties" (V.A.M.S. § 138.410(2)) are lacking in persuasive supporting force. It is not necessary to say whether the commission erred in permitting the intervention of the school districts or to consider whether they could employ expert witnesses to make appraisals. Before the tax commission, in the circuit court and here, the county represents whatever interest or rights the several school districts may have had and their status or rights are now immaterial and certainly unnecessary to a determination of the basic problems involved upon this appeal. And so it is with the prosecuting attorney, he may on occasion be charged with the duty of assisting or representing the tax commission but he is also charged with the duty of representing the political unit in which he was elected, the county. V.A.M.S. § 56.070. And in this proceeding the tax commission, if it needed representation, and the public, other than the public interest represented by the county, were represented by an assistant attorney general (V.A.M.S. § 138.410(2)) and there was no basic conflict of interest and all public parties and their separate public interests were represented. And of course the "private rights" and interests of the appellant, who after all instituted the review proceedings before the board of equalization and the tax commission, were indeed adequately represented by respected counsel.
In its essence the appellant's contention that the county and school districts do not have the right, under the Administrative Procedure and Review Act (Ch. 536 RSMo 1959, V.A.M.S.), to a judicial review of a decision of the tax commission lowering valuations is that the constitution and statutes have provided a complete and comprehensive plan or scheme for the review and correction of tax assessments. It is urged, since the ultimate authority and responsibility for administering the plan have been vested in the State Tax Commission and, *659 since the respondents are subordinate agents or units of the state, that it is not within their province or power to challenge the commission's determination. In support of this basic contention it is said that counties and school districts have only such powers as have been granted by the legislature, that the right to judicial review is statutory and has not been specifically conferred on the respondents, that the decisions of administrative tribunals affecting "private rights" only are subject to review and, finally, that the respondents are not "person(s) aggrieved" within the meaning of the administrative review act,"Any person * * * who is aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, shall be entitled to judicial review thereof." V.A. M.S. § 536.100.
Some of these matters need not be considered in detail; admittedly, the legislature may grant the right of appeal or review of tax assessments to either the taxpayer or the state (or one of its political units), and it may also limit or deny the right to either the taxpayer or the state. L.R.A.1915B, pp. 875, 877; Birmingham Drainage Dist. v. Chicago, B. & Q. R. Co., 274 Mo. 140, 202 S.W. 404. And, the legislature has not in specific terms granted the right of review to counties; on the other hand, it has not specifically denied the right. In some circumstances, as when there is not a contested case by parties to the proceeding, or there is an intercounty equalization, there are tax commission orders that even a taxpayer asserting private rights may not have reviewed. May Department Stores Co. v. State Tax Commission, supra; Foster Bros. Mfg. Co. v. State Tax Commission, (Mo.) 319 S.W.2d 590. And, on occasion, some states have denied the right of review to political subdivisions or their taxing officials when the right had not been specifically granted for the asserted reason that they were not an "aggrieved party" within the meaning of the tax statute (In re Proposed Assessment by Treasurer of Woodbury County v. Lytle Investment Co., 219 Iowa 1099, 260 N.W. 538), although the same court had previously held that the general civil code provision authorizing appeals by "any person who may feel aggrieved" included the city and local board of equalization. Farmers' Loan & Trust Co. v. City of Newton, 97 Iowa 502, 66 N.W. 784, 785. Also, admittedly, our constitution and statutes contemplate a comprehensive plan for the valuation of property for tax purposes and in general the administration of the over-all scheme has been entrusted to the State Tax Commission. Const.Mo. Art. 10, Sec. 14, V.A. M.S.; Ch. 138 RSMo 1959, V.A.M.S.; Mercantile Trust Co. v. Schramm, 269 Mo. 489, 190 S.W. 886. But as will subsequently appear from the problems involved in this appeal, the over-all plan is not as plain as the appellant assumes. But the fact that the commission may in certain circumstances be the final arbiter of valuation, or the fact that there is no specific legislation on the subject, do not necessarily mean that in any event a political subdivision, a county, may or should be denied the right of judicial review. In the first place, whether a county or other interested political unit may appeal is a matter of statutory construction and for that reason "no fundamental generalizations can be made." Annotation 5 A.L.R.2d 576; 73 C.J.S. Public Administrative Bodies and Procedure § 176, p. 517. In the second place, whether there is or should be judicial review of the actions of administrative agencies is a question of policy (42 Am.Jur., Secs. 186-187, pp. 550-551), and the fundamental problem here is whether, considering all relevant constitutional and statutory enactments, that policy is manifest and includes a county.
That Missouri's policy is manifest cannot be questioned. It is now a part of the fundamental law, the constitution provides that "All final decisions * * * of any administrative officer or body * * * which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination *660 whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." Const. Mo. Art. 5, Sec. 22. Thus, while the language "private rights" is employed, the general policy of judicial review of administrative decisions is firmly established. The general statute relating to appeals does not mention either public or private rights and the underscored language indicates the only limitations: "Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his appeal to a court having appellate jurisdiction * * *." V.A.M.S. § 512.020. While this statute may or may not govern appeals from administrative agencies it is expressive of the state's general policy of allowing appeals almost as a matter of right. In any event, pursuant to the constitutional mandate, "as provided by law," and its general declaration of public policy, the legislature enacted the Administrative Procedure and Review Act, Chapter 536 RSMo 1959, V.A.M.S. It is not necessary to set forth all the provisions of that act or to discuss its many purposes, in so far as it may bear on this appeal it contains these significant provisions. The administrative tribunal must give notice of its findings and every decision "in a contested case" must be in writing. V.A.M.S. § 536.090. "Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case * * * shall be entitled to judicial review thereof * * *." V.A.M.S. § 536.100. The act does not mention or distinguish between what the appellant calls public and private rights and public policy is again stated and the emphasis is upon "Any person * * * aggrieved * * * in a contested case."
The statutes relating to the assessment and levy of taxes in the first instance, by the county assessor, provide that "Every person who thinks himself aggrieved by the assessment of his property may appeal to the county board of equalization." V.A. M.S. § 137.275. But when we come to the equalization and review of assessments, Chapter 138 RSMo 1959, V.A.M.S., particularly by the State Tax Commission, it is provided without limitation that "The action of the commission, or member or agent thereof, when done as provided in this section, shall be final, subject, however, to review in the manner provided in sections 536.100 to 536.140 RSMo, * * *." V.A.M.S. § 138.470(4). Prior to 1957 this statute provided that the commission's decision was final "subject, however, to the provisions of section 22, article V of the Constitution of Missouri and laws enacted thereunder." But in 1957 the General Assembly specifically amended the statute by deleting the reference to the constitutional provision and expressly providing that the commission's action was final but subject to review under the provisions of the Administrative Procedure and Review Act. Thus the public policy of judicial review of the actions of administrative tribunals and of the State Tax Commission in particular is indubitably established. It should be noted in passing that the latter statute, specifically relating to the tax commission, does not mention "private rights" and it does not specify who may seek review, neither does it limit the right, it simply provides that the commission's final action is "subject, however, to review in the manner provided in sections 536.100 to 536.140."
Since the state's public policy of judicial review of administrative decisions, and of final orders of the State Tax Commission in particular, is manifest, are there any reasons, legal or practical, public bodies should be denied that important right and additional safeguard? Here, succinctly, the legal question is whether a county may reasonably fall within "Any person * * * who is aggrieved * * * in a contested case." This is no place to enter into a discussion of legal philosophy, but in the appellant's emphasis and insistence upon "private *661 rights" as a delimiting term of art there may be some failure to carefully distinguish between "public law" and "private law" on the one hand and "public rights" and "private rights" on the other hand. See these terms in Webster's New International Dictionary, 2d ed.; Holland, Jurisprudence, pp. 123-146; and State ex rel. Police Retirement System of City of St. Louis v. Murphy, 359 Mo. 854, 861, 224 S.W.2d 68, 72; Smith v. Hendricks, (Mo. App.) 136 S.W.2d 449, 455. The first part of the constitutional mandate (Art. 5, Sec. 22) is procedural (Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647) and the use of the words "private rights" in setting forth the minimum standard of review was not necessarily intended as a limitation or restriction on the legislative power to provide for judicial review of "public rights" upon the initiative of an appropriate "public body." The scope of review is governed by the latter, more inclusive constitutional provision of whether the administrative decision is authorized by law and whether it is supported by competent and substantial evidence upon the whole record. "It would seem too plain for serious question that the legislature had and has the power and authority to provide for any scope of judicial review it may desire, so long as the provisions made are not in conflict with or repugnant to the federal and state constitutions." State ex rel. St. Louis Public Service Co. v. Public Service Commission, 365 Mo. 1032, 1042, 291 S.W. 2d 95, 102.
Bearing more directly upon the precise question of whether a county may have a final decision of the State Tax Commission judicially reviewed are these further considerations. The State Tax Commission with the City of St. Louis and the Board of Education of the City of St. Louis as interveners all joined in an appeal to this court from the judgment of a circuit court reducing tax assessments. Foster Bros. Mfg. Co. v. State Tax Commission, (Mo.) 319 S.W.2d 590. And in Taney County v. Empire District Electric Co., (Mo.) 309 S.W.2d 610, the county together with school and road districts instituted and prosecuted in the circuit court a petition to review an order of the State Tax Commission reducing the electric company's valuation and it must have been assumed that these political units had the right to a judicial review and that the circuit court had jurisdiction to entertain their petition. Kearney County v. Hapeman, 102 Neb. 550, 552, 167 N.W. 792. While the State Tax Commission was created by constitutional mandate to equalize assessments between counties and to hear appeals from local boards (Const.Mo. Art. 10, Sec. 14), taxes are levied by counties and they have such additional taxing powers as the legislature may grant (Const.Mo. Art. 10, Secs. 1, 11(a)) and, representing the state at large and in some measure themselves and other local units of government, counties have indeed a vital interest in all questions relating to the levy and assessment of taxes. Kearney County v. Hapeman, supra. Thus, not only is the county an "interested" party, this proceeding is definitely a "contested case" within the meaning of the Administrative Procedure and Review Act, section 536.010. Koplar v. State Tax Commission, (Mo.) 321 S.W.2d 686, 693. In part, the appellant's argument assumes that there is a contest and a conflict of interest between the State Tax Commission and the county. But in this proceeding the commission acted in its appellate quasi-judicial capacity (Const.Mo. Art. 10, Sec. 14) and the contest is between the St. Joseph Lead Company and St. Francois County. In any event, in summary, the county had an obvious interest in the subject matter of the proceeding and was an "interested party" in a "contested case" and therefore was an "aggrieved" party or person within the meaning of the relevant statutes. V.A.M.S. §§ 138.470(4), 536.100.
It is not suggested that there is any impropriety, in a moral or ethical sense, in allowing political units the right of judicial review and no practical reasons of unfairness are advanced. The company has paid *662 its 1959 taxes on the commission's reduced valuation and there can be no unjust loss to the appellant. In view of all these considerations, the county had the right to judicial review and the circuit court had jurisdiction to entertain the petition.
The commission found that the county's valuation was discriminatory, unlawful and unfair. And in its brief here one of the appellant's points is that "no substantial basis appears in the evidence to support the assessment made by the assessor of $12,205,100.00." The respondents do not challenge either the commission's finding or the appellant's statement and so it is assumed as a fact that there is no evidential support for the county's valuation. The respondents do not contend, as the circuit court found, that the commission's valuation is not supported upon the record, but to point up and dispose of the principal problem it is necessary to briefly consider this phase of the proceeding. In its petition to the commission the appellant asserted that the county's assessment of $12,205,100 was "more than the property is worth" and should be reduced to its "actual value" which the petitioner believed "to be 30% of the appraised value determined by Roy Wenzlick & Co.," ("economists, appraisers, counselors and publishers").
In support of its claim the lead company offered as a witness its geologist, who described in some detail the company's property, principally its mineral deposits and reserves, their depletion and future and in general the economic condition of the industry. But its principal witness, in fact the only witness as to value, was Mr. Randall, the manager of the appraisal department of Roy Wenzlick & Co. The substance of his testimony was that he and his staff had made a detailed appraisal of the St. Joseph Lead Company property in St. Francois County for the purpose of "estimating" its "fair market value." His definition of "fair market value" was "the highest price in terms of money that a willing and well-informed buyer would be warranted in paying a well-informed (seller) and (an) equally well-informed seller (would be) justified and (in) accepting for a property, neither party being under compulsion or duress, and a reasonable period of time to dispose of the property." In arriving at fair market value Mr. Randall employed three approaches, the income approach, the market data approach and the summation approach. Applying each of these approaches he arrived at valuations of $20,304,000, $20,065,761 and $22,946,546. The details of these evaluations are set forth in six formidable volumes of statistics and data and one volume of testimony, but for the purposes of this appeal the details need not be noted.
The commission, among other findings, found in its conclusions of law that (1) "The Constitution provides that real property shall be assessed for tax purposes at its value or such percentage of its value as may be fixed by law" and (2) "There is no such thing as an absolute true value of land. The values mentioned in the Statutes are the valuations of the officials whose duty it is to make them. Land is not like commodities which have a fixed market price at a given period. Its value is determined always by the estimate of the party who values it."
In connection with Mr. Randall's theories and the commission's conclusions of law it should be noted, at least parenthetically, that the statutes require that the county assessor shall assess property "at its true value in money." V.A.M.S. § 137.115. When it comes to the equalization and review of tax assessments, the statutes speak of "real value" and "true value as compared with the average valuation of all the real and tangible personal property of the county." V.A.M.S. § 138.050. And, according to the statutes specifically applicable to the State Tax Commission, the commission may "raise or lower the assessed valuation" of any property (V.A.M.S. § 138.380(1)) and in equalizing valuations among counties it is the duty of the commission to add to the valuations of property "valued below its real value in money such *663 per cent as will increase the same in each case to its true value" and deduct from overvalued property "in money such per cent as will reduce the same in each case to its true value." V.A.M.S. § 138.390(2). Other than the inferences one might draw from its conclusions of law, the commission did not indicate either the theory or the evidence upon which it based its valuation, the commission found "that the fair, reasonable and lawful valuation of petitioner's property, above described, when assessed in the same relation to its value as other real property in said County" was $6,657,720. The statutes (sections 137.115, 138.050 and 138.390) do not define the terms "true value in money," or "real value," nor do they set forth standards, methods or theories by which the fact is to be determined. And, other than inferentially perhaps, it does not appear from this record what relationship or bearing Mr. Randall's "fair market value" had to these vague statutory standards.
The appellant has briefed at length the point that the circuit court erred in holding that the commission's finding was unsupported upon the whole record. In so contending one of its points is that "The Hoskold formula, used by Mr. Randall in his valuation on the income approach, is the proper method of evaluating mining properties, and has been approved by the courts." And, along with other factors and considerations, the so-called Hoskold formula has been given some recognition in the valuation of mining property. State v. Oliver Iron Mining Co., 198 Minn. 385, 389, 270 N.W. 609, 611; Village of Aurora v. Commissioner of Taxation, 217 Minn. 64, 14 N.W.2d 292. But in Minnesota, unlike Missouri, there has been a systematic effort to scientifically and fairly value timberland and mining properties for the purpose of taxation. The effort, however, has not been completely successful, and it has been pointed out that in some situations the Hoskold formula and "the analytical appraisal methods" are of questionable weight and result in "lack of uniformity when compared to valuation methods used for agricultural or urban real estate and business properties." Roberts, Tax Valuation of Minnesota Iron Ore, 34 Minn.L.R. 389, 408-414. If these methods result in a lack of uniformity and produce subclassifications of real estate for the purposes of taxation there is a violation of the statutory standards and requirements. Drey v. State Tax Commission, (Mo.) 345 S.W.2d 228, 237; Cupples Hesse Corporation v. State Tax Commission, (Mo.) 329 S.W.2d 696, 701. This is not to criticize the commission but upon this record the only evidence before it of the value of the appellant's property was Mr. Randall's appraisal. All this discussion is to place in context the important problem; it bears upon and is a necessary preliminary to the question whether, as the circuit court found, the commission abused its discretion in refusing to grant the respondents a continuance.
The relevant chronology is that on July 16, 1959, St. Joseph Lead Company appeared before the Board of Equalization and in the same month before the Board of Appeals. On September 29, 1959, its petition for a review of the assessments was filed with the State Tax Commission and a copy delivered to the county assessor. On October 20, 1959, the commission notified the parties, including the county clerk, that a hearing would be held at Farmington on December 8, 1959. The hearing commenced on December 8 and extended from December 9 to December 16 and on December 21, 1959, the commission gave its decision. On the first day of the hearing, after some other preliminary matters, the respondents filed an application for a continuance together with supporting affidavits and, in addition, offered supporting testimony. The appellant opposed the application for a continuance and the commission denied it.
It is not necessary to detail all the evidence relied on in support of the application. The respondents pointed to the complexity and magnitude of the problem and to the difficulties they had encountered. They had sought data, reports and information *664 from various state and federal agencies, a large part of which they had not received. In their affidavits and testimony the respondents' representatives pointed out that to properly prepare for a valuation hearing and present evidence it was necessary to have a comprehensive appraisal by at least one qualified appraisal expert. And, of course, there was no such appraiser available in St. Francois County and the county's officials were not qualified to make such a study. Then too there was the problem of the respondents' authority to employ an appraiser, even now the appellant contends that they may not lawfully do so (a problem not now necessary to a disposition of this appeal). The county officials secured a list of qualified appraisers and began contacting them. After negotiating with one they were finally informed that some of its employment "involved mining companies" and there might be "a conflict of interest." Finally an appraiser was found who accepted employment. This man testified that it would require a minimum of ninety days to appraise the property and of course there had not been time since his employment on November 25 to make the appraisal. Mr. Randall and his staff, the appellant's expert, started their appraisal at "the end of August" 1959, and it was "completed Friday or Saturday (December 4 or 5) but not bound up and assembled," and the hearing was set on December 8.
The respondents did not and could not make the customary offer of proof of what an appraisal on their behalf would show, but the immediate and practical consequence of their not having the benefit of an appraisal and an expert's advice was that they were all but defenseless and necessarily groped. Their only recourse was to attack the appellant's appraisal. They cross-examined Mr. Randall in detail and at length but of course with indifferent success. Their appraiser, Mr. Hetlage, criticized the approaches and methods employed by Mr. Randall, he said that they omitted important considerations, and, in short, it was his opinion that their appraisal did not reflect a true valuation. Nevertheless, as indicated, the result was that the only evidence before the commission as to the value of this extensive property was the testimony of the appellant's appraiser. Again, this is not to criticize the commission and it is not to express an opinion as to how or upon what theory the case should be tried or to indicate what factors should be considered or what evidence should be heard. It is to say, however, that if the case is to be tried and the valuation of the company's property for the purposes of taxation determined by compurgation of expert appraisers, fairness would certainly demand that the respondents be given an equal and reasonable opportunity to present such a witness and their theory of valuation. In these briefly noted but particular circumstances there was a prejudicial abuse of discretion in the commission's refusal to grant a continuance. Sup.Ct.Rule 100.07 (b) (7), V.A.M.R.; V.A.M.S. § 536.140, subd. 2(7); Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 225, 59 S.Ct. 206, 215, 83 L.Ed. 126, 138; In re Ackroyd's Case, 340 Mass. 214, 163 N.E.2d 271; 42 Am. Jur. (Public Administrative Law), Sec. 144, p. 487; 73 C.J.S. Public Administrative Bodies And Procedure § 133, p. 459.
Therefore, the judgment is affirmed in so far as it finds and adjudges that the commission abused its discretion in refusing to grant the respondents a continuance; (the circuit court had neither the power nor the authority to fix the valuation of the appellant's property, Koplar v. State Tax Commission (Mo.), 321 S.W.2d, l. c. 697; Drey v. State Tax Commission (Mo.), 345 S.W.2d, l. c. 238); otherwise the judgment is reversed and the cause remanded with directions to the circuit court to enter a judgment remanding the cause to the State Tax Commission.
BOHLING and STOCKARD, CC., concur.
*665 PER CURIAM.
The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.
All concur.