**CITY OF RICHMOND HEIGHTS, Missouri and Clayton School District, Appellants,**

v.

**BOARD OF EQUALIZATION OF ST. LOUIS COUNTY et al., Respondents.**

**CITY OF RICHMOND HEIGHTS, Missouri, Appellant,**

v.

**STATE TAX COMMISSION of Missouri, Respondent.**

No. 61240.

Supreme Court of Missouri, En Banc.

Sept. 11, 1979.

Rehearing Denied Oct. 10, 1979.

---

William J. Travis, Donald U. Beimdiek, St. Louis, for appellants City of Richmond Heights, et al.

Theodore D. Ponfil, Louis F. Bonacorsi, Clayton, for appellant Clayton School Dist.

Karen Weinhaus Levy, Asst. County Counselor, Thomas W. Wehrle, George Lang, II, Clayton, for respondent Board of Equalization of St. Louis Co., et al., State Tax Comm.

Samuel C. Ebling, Gregory F. Hoffmann, Millar, Schaeffer & Ebling, St. Louis, for respondent Clayton Road Dev. Co.

WELLIVER, Judge.

Appellants seek to obtain judicial review of action taken by the St. Louis County Board of Equalization in reducing the assessed valuation of certain property within the city limits of appellant City of Richmond Heights and within the boundaries of appellant Clayton School District. This court has appellate jurisdiction in the case because it involves a construction of the revenue laws of Missouri.

The real estate in question comprises the Westroads Shopping Center and is owned by respondents Clayton Road Development Co., Westroad Development Co., Westroad Realty Co., Andrew Sansone and Jane A. Moore. Respondent Frank J. Antonio, the St. Louis County Assessor, set the combined value of the Westroads Shopping Center properties at $2,703,560.00 for the year of 1974. The property owners filed a combined appeal of the 1974 assessment to the St. Louis County Board of Equalization (hereinafter referred to as the "Board"), which reduced the assessed value of the Westroads Shopping Center properties to $1,851,390.00. As a consequence of this reassessment appellant City of Richmond Heights lost $6,817.37 and appellant Clayton School District lost $31,445.07 in 1974 property tax revenues.

The City of Richmond Heights then filed a petition with the Circuit Court of the County of St. Louis, Division 6 to review the decision of the Board pursuant to § 536.100, RSMo 1978 (Rule 100.03). Appellant Clayton School District was later added as a party plaintiff, and the petition was amended to include an alternative count for certiorari pursuant to § 536.150, RSMo 1978 (Rule 100.08). Upon the trial court's order, the property owners paid their 1974 taxes, based upon the reduced assessment, into the court registry, and the court stayed all interest and penalties upon any additional taxes ultimately found to be due. The trial court sustained respondents' motion to dismiss, citing *State ex rel. St. Francois County School District R–III v. Lalumondier,* 518 S.W.2d 638 (Mo.1975) as its authority. The City and Clayton School District brought this appeal.

In addition to the petition for review and for certiorari, the City also filed an appeal of the Board's decision with the State Tax Commission. Upon receipt of a written offer of proof submitted by the City, the Commission dismissed the appeal on the ground that the City had no right to appeal. The City appealed the Commission's action to the Circuit Court of the County of St. Louis, Division 14. The circuit court sustained the Commission's action. The City appealed. These appeals were consolidated in the court of appeals.

The Missouri Court of Appeals, Eastern District, initially filed an opinion dated November 21, 1978, in which it affirmed the judgment of the circuit court dismissing the proceedings for review filed by appellants, also relying on *Lalumondier.* This initial opinion reasoned that § 536.100 provides no standing in appellant to seek judicial review of the Board's assessment because the proceeding before the Board was not a "contested case" within the meaning of § 536.-010(2). The court of appeals withdrew its initial opinion on January 12, 1979, after appellants had filed a motion for rehearing. On January 30, 1979, the court of appeals ordered the case transferred to this court, stating that resolution of the case requires construction of the revenue laws of Missouri. The transfer order further suggested that the case requires resolution of an apparent conflict in the court's construction of Mo.Const. art. V, § 18. We decide the case the same as on original appeal.

The appeal before us raises three questions: (1) does a city have standing under § 138.430 to appeal an assessment by the board of equalization to the State Tax Commission; (2) does a city or school district have standing under § 536.150 to seek review in circuit court of a board of equalization's assessment of property within its boundaries; and (3) does a city or school district have standing under § 536.100 to seek review in circuit court of a board of equalization's assessment of property within its boundaries. We answer each of these questions in the negative and the trial court will be affirmed.

## I.

█ Appellant city sought review of the board of equalization's reduction in the assessment of Westroads Shopping Center properties before the State Tax Commission. The city argued before the Commission and the trial court that § 138.430 gives the city standing to appeal to the commission the Board's reassessment and that if § 138.430 does not provide such standing, the statute violates Mo.Const. art. X, § 14. We hold that the city has no standing to appeal to the State Tax Commission.[1]

In *Lalumondier*, the court adopted the rule that "in the absence of express statutory authorization no appeal or other review is provided for political subdivisions of the state in regard to alleged underassessments." 518 S.W.2d at 642. Section 138.-430, RSMo 1978 provides:

> Every owner of real property or tangible personal property and every merchant and manufacturer shall have the right of appeal from the local boards of equalization under rules prescribed by the state tax commission. Said commission shall investigate all such appeals and shall correct any assessment which is shown to be unlawful, unfair, improper, arbitrary or capricious.

This provision expressly grants the right of appeal only to owners, merchants and manufacturers. It does not extend the right of appeal to a city or any other political subdivision of the state. The City of Richmond Heights is not an owner of property. The absence of statutory authorization for a city to appeal to the State Tax Commission does not conflict with Mo.Const. art. X, § 14, which provides:

The General Assembly shall establish a commission . . . to equalize assessments as between counties and, under such rules as may be prescribed by law, to hear appeals from local boards in individual cases and, upon such appeal, to correct any assessment which is shown to be unlawful, unfair, arbitrary or capricious.

This section does not require that the Generally Assembly prescribe any rule permitting a political subdivision of the state to appeal to the State Tax Commission. "[T]he legislature may grant the right of appeal or review of tax assessments to either the taxpayer or the state (or one of its political units), and it may also limit or deny the right to either the taxpayer or the state." *Lalumondier*, 518 S.W.2d at 641; *In re St. Joseph Lead Company*, 352 S.W.2d 656, 659 (Mo.1961). The State Tax Commission correctly dismissed the city's appeal in this case, and the circuit court correctly upheld the action of the commission.

## II.

█ Appellants amended the original petition to add an alternative count for review by certiorari of the board of equalization's reassessment directly in circuit court pursuant to § 536.150 RSMo 1978 and Rule 100.08.[2] Our decision in *Lalumondier* is authority for the denial of this claim.

In *Lalumondier,* the St. Francois County School District sought review by certiorari under § 536.150 and Rule 100.08 of the failure of the St. Francois County Board of Equalization to increase the assessed valuation of real property which was located within the school district. The owner had not appealed the board of equalization's assessment. The court examined the lan-

---

1. In *Lalumondier*, the school district abandoned a similar claim. The court noted:

   It appears in the transcript that relator appealed this decision to the state tax commission but that the commission dismissed the appeal for the reason that the statute only provides a right of appeal to a property owner. While the correctness of that action is only incidentally before us we think it is appropriate to say that we agree therewith because such was in accord with the express statutory provision.

518 S.W.2d at 641.

2. Appellants appear to have abandoned this claim in their briefs on appeal in favor of pressing their count for review under § 536.100 at Rule 100.03. Appellants recognized that if the board of equalization proceeding were a contested case under § 536.100, then "[t]he certiorari provisions of § 536.150 cannot apply because the two statutes are mutually exclusive."

guage of § 536.150 and concluded that it contained no express authorization for a school district to secure judicial review of the board of equalization's determination by certiorari. Consequently, the court held that relator did not have standing to seek such review. This reasoning applies with equal force to the city and school district in the present case.

### III.

■ Appellants' contend that they are entitled to seek judicial review of the board of equalization's reassessment under § 536.-100 and Rule 100.03. The right to seek judicial review depends upon its express authorization by either a statute or rule. Section 536.100 provides that "[a]ny person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case . . shall be entitled to judicial review thereof." Rule 100.03 contains identical language. There is no dispute concerning appellants' contentions that they are persons within the meaning of § 536.100, that they are aggrieved by the Board's decision, and that they have exhausted all administrative remedies. The issue is whether the proceeding before the board of equalization constituted a "contested case" within the meaning of Missouri's Administrative Procedure Act. Appellants argue that the board of equalization proceeding was a "contested case" "because the Westroads property owners' interest in lowering their tax assessment was directly opposed to the interest of the County, the City of Richmond Heights and the Clayton School District." The existence of opposing interests alone fall short of meeting the statutory definition of a "contested case". The term "contested case" is defined for this purpose at § 536.010(2) to mean "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." In *State ex rel. Leggett v. Jensen*, 318 S.W.2d 353 (Mo. banc 1958), the court considered this definition of "contested case" in connection with the denial of attorney's fees by the Superintendent of Insurance. The court stated

that " 'contested case' within the meaning of the Act does not mean every case in which there may be a contest about 'rights, duties or privileges.' " *Id.* at 536; *Hunter v. Madden,* 565 S.W.2d 456, 459 (Mo.App. 1978).

Appellants call attention to the fact that § 138.100.2 requires the St. Louis County Board of Equalization to meet monthly "for the purpose of hearing allegations of erroneous assessments." Appellants stress the use of the word "hearing" in § 138.100.2 and contend that its use brings board of equalization proceedings within the definition of "contested case" found in § 536.-010(3). We cannot agree. "[T]he meaning of [the term hearing] in a particular case is to be determined by the character of its use either as a participle or a noun." 39A C.J.S. Hear, p. 632, *citing State ex rel. Case v. Seehorn,* 283 Mo. 508, 528–29, 223 S.W. 664, 670 (banc 1920). It is apparent that the term "hearing" is used in § 536.010 as a noun, but that it is used in § 138.100.2 as a participle ("hearing allegations"). The grammatical difference suggests a difference of substance. When the term "hearing" is used as a noun, as it is in the definition of "contested case" in § 536.-010(3) the term carries a sense which

> presupposes a proceeding before a competent tribunal for the trial of issues *between adversary parties,* the presentation and consideration of proofs and arguments, and determinative action by the tribunal with respect to the issues; it also requires that the parties be apprised of all evidence offered or considered, with the opportunity to test, examine, explain, or refute such evidence; it contemplates an opportunity to be heard, not only the privilege to be present when the matter is being considered, but the right to present one's contentions and to support the same by proof and argument. . . . Thus, *there is no "hearing" when the party does not know what evidence is offered or considered, and is not given an opportunity to test, explain, or refute.*

39A C.J.S. Hear, p. 632–33 (emphasis supplied). That the element of adversity is

essential to the meaning of "hearing" as it is used in § 536.010 is underscored by the fact that the word occurs in the definition of "contested case." Certainly, the term "contest" denotes an adversary proceeding. We conclude that in using the term "hearing" in § 536.010, and in using the term "contested case" in § 536.100, the General Assembly contemplated an adversary proceeding.

The proceeding before the board of equalization is not a hearing in this sense.[3] The Board hears only the evidence of owners as required by § 138.100. There is no provision for notice to the various governmental entities that may benefit from the imposition of taxes calculated on the assessed valuation of property under consideration. There was no notice given the appellants in the instant case, and appellants did not participate in the proceedings before the board of equalization. A board of equalization proceeding thus presents none of the indicia of a contested case. Appellants are in the anomalous position of urging that they have standing to appeal the determination of the Board in a proceeding of which they were not entitled to notice, in which they were not in fact parties or contestants, in which they could not intervene, within which they had no right to present evidence or to be apprised of the evidence presented, and which was not an adversary proceeding. We do not believe that the General Assembly intended the term "hearing" as used in the definition of "contested case" to include a nonadversary proceeding such as that before a county board of equalization.

In *Lalumondier,* this court said that a county board of equalization acts to represent the interests of a city that delegates to the board the performance of assessment functions. The court noted the failure of the General Assembly to provide for review

of alleged underassessments at the request of a governmental subdivision, and explained: "No doubt such was originally omitted on the theory that public officials would adequately protect the interests of the state and its subdivisions and hence it was only necessary to provide an appeal for property owners who considered the valuation of their property to be excessive." 518 S.W.2d at 643. Provision for review by other political subdivisions would seriously hinder the smooth functioning of an otherwise streamlined procedure for tax assessments. The taxpayer would be subjected to an extended period of uncertainty as to the amount of his tax liability while any entity that might benefit from a higher assessment squabbles with the board over the valuation of the taxpayer's property. The 1974 assessment of respondent owners' property in the instant case has been stalled in litigation for over five years, despite the owners' satisfaction with the Board's assessment. It is exactly this sort of disruption in the assessment process that the General Assembly sought to avoid. Appellants attempt to distinguish *Lalumondier* on the ground that the petitioner in that case did not seek review under § 536.100, but proceeded under § 536.150, and that in *Lalumondier* the board of equalization refused to increase an assessment whereas here the Board affirmatively reduced the assessment. We find neither ground persuasive. The reasons moving judgment in *Lalumondier* were independent of which avenue of review was pursued, but rested on the absence of any specific statutory authority giving relator standing: "We have the view that if the General Assembly had intended to provide a review of alleged underassessments at the request of a governmental subdivision it would have so provided in Section 138.430(2) which provides for an appeal by property owners." 518 S.W.2d at 643.

---

3. In the Board's initial notice to owner Clayton Road Development Co. denying its appeal from the county assessor's valuation, the Board referred to its upcoming session as a "hearing," and advised the owner that it should present additional evidence then. This reference does not satisfy the requirement of a hearing within

the definition of contested case in § 536.010(2) because .010 contemplates an adversary hearing whereas in reassessment proceedings before a county board of equalization, it is the board itself that represents the interests of local governmental entities. *Lalumondier,* 518 S.W.2d at 643.

*In re St. Joseph Lead,* 352 S.W.2d 656 (Mo.1961), is inapposite. In *St. Joseph Lead,* the property owner appealed the assessment of its property by the county board of equalization to the State Tax Commission. After the State Tax Commission reduced the assessment, the county appealed. This court held that the county was authorized to seek review in circuit court of the findings of the State Tax Commission under § 536.100. Central to the determination that a proceeding before the State Tax Commission constitutes a contested case is the fact that § 138.470.4 expressly states that actions of the State Tax Commission shall be "subject . . . to review in the manner provided in sections 536.100 to 536.-140, RSMo." [4] There is no comparable statute providing that actions of a local board of equalization shall be reviewed as provided in §§ 536.100 to 536.140. Appellants draw two analogies between *St. Joseph Lead* and the instant case: that there was an affirmative reduction in the assessment by the administrative body and that the county in *St. Joseph Lead* sought review under § 536.100. Neither analogy is relevant to the question whether appellants have standing in the present case. The distinction of overriding importance between *St. Joseph Lead* and the instant case is that *St. Joseph Lead* represented an attempt by the county to appeal from the level of the State Tax Commission and not from the level of the board of equalization. It was the property owner, not the county, that initially appealed the assessment of the board of equalization to the State Tax Commission. The statutory definition of "contested case" must be applied to the specific type of administrative proceeding sought to be reviewed. A hearing before the State Tax Commission is an adversary "hearing" within the definition of "contested case" in § 536.010 because "all persons affected, or liable to be affected by review of said as-

sessments thus provided for, may appear and be heard at said hearing." § 138.470.1 RSMo (1978).

Appellants question whether it is sensible to construe the relevant statutes to make the board of equalization but not the State Tax Commission a court of last resort when the Board is a "less sophisticated body" than the commission. The answer lies in the fact that a board of equalization represents the interests of taxing jurisdictions such as appellants in proceedings before it. A local board of equalization, unlike the State Tax Commission, has an interest in maintaining the local tax base. *Lalumondier,* 518 S.W.2d at 643. However, once a case comes before the State Tax Commission, the interests of local taxing jurisdictions are no longer represented by the decision-making body. "[I]n this proceeding the [State Tax Commission] acted in its appellate quasi-judicial capacity . . . and the contest is between the St. Joseph Lead Company and St. Francois County." *St. Joseph Lead,* 352 S.W.2d at 661. This difference justifies the General Assembly's provision for appeal by political subdivisions from the State Tax Commission but not from a county board of equalization.

## IV.

■ The court of appeals in its order to transfer suggested that there is a conflict between the interpretation given Mo.Const. art. V, § 18 in *Lalumondier* and in *St. Joseph Lead.*[5] Article V, § 18 of the Missouri Constitution provides in relevant part:

All final decisions, findings, rules and orders on [sic] any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the

---

4. The court in *St. Joseph Lead* found that the county's right of appeal from the state tax commission under § 536.100 was "indubitably established" by the fact that 1957 amendments to § 138.470.4 substituted the quoted language for the words "subject . . . to the provisions of section 22, article V of the Constitution

of Missouri and laws enacted thereunder." *St. Joseph Lead,* 352 S.W.2d at 660.

5. Prior to amendments in 1976, this section of the Missouri Constitution was section 22 of Article V.

determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record.

In *St. Joseph Lead* the court said that the use of the words "private rights" in art. V, § 18 "was not necessarily intended as a limitation or restriction on the legislative power to provide for judicial review of 'public rights' upon the initiative of an appropriate 'public body.'" 352 S.W.2d at 661. In *Lalumondier* the court considered the language of both art. V, § 18, and § 536.150, and concluded: "We do not think that the right, if any, of relator [school district to seek review by certiorari of an alleged underassessment by the county board of equalization] in this case is encompassed within either of the quoted provisions." 518 S.W.2d at 643. The court in *Lalumondier* recognized that the legislature could provide for review of public rights as well as of private rights. If the court had read art. V, § 18 to preclude judicial review of public rights, it would have been unnecessary to consider whether § 536.150 purported to permit such review. Moreover, *Lalumondier* cited *St. Joseph Lead* for the proposition that the legislature may grant or deny the right of review of tax assessments to either the taxpayer or the state. *Id.* at 641. Finally, *Lalumondier* acknowledged the power of the legislature to provide for review of public rights in suggesting "it may be that the legislature should review the matter and give consideration to an appropriate amendment of the section [536.-150]." *Id.* at 643. We find no incompatibility in the holdings of *Lalumondier* and *St. Joseph Lead*.

We find no express statutory authorization for a city or school district to obtain review of a decision of the county board of equalization reducing an assessment of the real estate of a taxpayer. We affirm the judgment of the trial court.

BARDGETT, C. J., DONNELLY, RENDLEN, SEILER, JJ., WELBORN, Special Judge, and FINCH, Senior Judge, concur.

MORGAN, J., not sitting.

HIGGINS, J., not participating because not a member of the court when cause was submitted.