THE STATE ex rel. CONSOLIDATED SCHOOL DISTRICT NUMBER 9 OF BATES COUNTY et al. v. CHARLES A. LEE, State Superintendent of Public Schools.

In Banc, May 13, 1924.

1. **AUTHORITY TO CORRECT ERRORS:** Mandatory. A statute declaring that a certain public officer "is hereby authorized to correct" certain errors is mandatory as respects all errors falling within the section, since the public interests and rights are concerned.

2. **SCHOOLS:** Report of District Clerk: Mailed and Lost: Receipt Assumed. The district clerk, in due time, made out and reported to the school district board the report he was required by statute to make, in which he set forth the number of teachers employed, the total number of days' attendance of all pupils, the length of the school term, the number of days taught by each teacher and the salary of each teacher, certified the report, placed it in an envelope properly addressed to the county clerk, affixed thereto proper and sufficient postage and deposited it at the usual postoffice. The county clerk does not deny that the report was received at his office, but states that he has no affirmative record showing its receipt, and that no record of the receipt or filing of such reports was kept other than the reports themselves. On the envelope was
303 Mo. Sup.—41.

State ex rel. Consolidated School District v. Lee.

the district clerk's usual return card, and the letter was never returned to him. *Held, first*, that these facts justify, if they do not compel, a finding that the report was received by the county clerk; and strength is given to the other facts by the presence of the return card on the envelope and the fact that the latter was not returned to the district clerk; and, *second*, as the county clerk omitted said report from his summary of the reports for the coun ty, and said district was thereby deprived of its share of the state public school funds, the State Superintendent of Schools is author- ized by Section 11181, Revised Statutes 1919, to correct said error by apportioning, out of the state moneys to be apportioned the next succeeding year, to said district the portion to which, under the statute, it was then entitled.

3. ———: **Apportionment of State Funds: Omission of District: Cor- rection.** Where a school district through no fault of its own has been omitted from the summary of the reports for the whole county which the statute requires the county clerk to send to the State Superintendent of Schools, who thereby has been led to deprive said district of it's share of the state school funds and to apportion and distribute to all other districts more than their share, the State Superintendent is authorized to right the wrong in his apportion- ment made in the next year following. The statute, Section 11181, Revised Statutes 1919, declaring that he "is authorized to correct any error made in the apportionment of the public school funds among the various counties of the State out of the public school fund of year next following the date when such mistake was made," is unqualified and mandatory, and embraces such error, though the apportionment made for the year the mistake occurred was mathe- matically correct from the data at the time in the office of the State Superintendent, but includes "any error" in the apportion- necessarily entered into his apportionment then made. That stat- ute cannot be confined to the correction of mistakes made by the State Superintendent, but includes "any error" in the apportion- ment.

Headnote 1: **Statutes**, 36 Cyc. 1161. Headnotes 2 and 3: **Schools and School Districts**, 35 Cyc. 824 (1926 Anno).

## Mandamus.

ALTERNATIVE WRIT MADE PEREMPTORY.

*DeArmond & Maxey* for relators.

*Jesse W. Barrett,* Attorney-General, and *Robert W. Otto,* Assistant Attorney-General, for respondent.

JAMES T. BLAIR, J.—This is a proceeding by mandamus to compel the Superintendent of Schools to act under Section 11181, Revised Statutes 1919, for the correction of a mistake alleged to have been made with respect to the apportionment of public school funds for the benefit of the Consolidated School District of which relators are directors. The respondent, with the court's consent, waives the formal issuance of the alternative writ and demurs to the petition in its stead, and the petition thereby stands in lieu of and as for that writ. The proceeding is obviously designed to secure a construction of Section 11181.

The demurrer admits the allegations of fact. In addition, certain facts are stipulated. There is also an affidavit of the district clerk and one of the county clerk. The facts are that the district clerk, in due time, made out and reported to the district board the report he is required to make under Section 11179, Revised Statutes 1919, in which he set out the number of teachers employed, the total number of days' attendance of all pupils, the length of the school term, the average attendance, the number of days taught by each teacher, the salary of each teacher, "and any other information the State Superintendent" required. It is both alleged and stipulated that the district clerk duly executed this report, placed it in an envelope properly addressed to the County Clerk of Bates County, at the county seat, Butler, Missouri, affixed thereon proper and sufficient postage and deposited it in the postoffice at Amoret, Missouri; that the district clerk's return card was on the envelope; that the letter has never been returned to him. It also is stipulated that the "county clerk does not deny that said report was received at his office, but states that he has no affirmative record showing its receipt," and his affidavit shows that at the time, and theretofore, no record or evidence of the receipt or filing of such reports was

kept in the county clerk's office other than the reports themselves. The district clerk received no notice of any kind that the clerk had not received the report. It further appears that the mails are customarily used for the transmission of such reports to the clerks. A summary of such reports in each county is made out by the county clerk and transmitted by him to the State Superintendent of Schools. Upon the basis of these summaries from all the counties and the city of St. Louis the State Superintendent apportions the public school moneys to the various counties, as provided by Section 11179. That section requires the State Superintendent, annually, to "apportion the public school fund applied for the benefit of the public schools among the different counties." It requires that he "shall apportion among the various counties" designated sums for several described classes of teachers, and "after the teacher apportionments have been deducted the remainder of the state school fund to be apportioned shall be divided by the total number of days' attendance of all the pupils of the public schools of the State, and the quotient thus obtained shall be called a pupil daily apportionment. The amount apportioned to each district shall be determined by multiplying this pupil daily apportionment by the total number of days' attendance of all pupils of each district." A proviso is added. Immediately follow the provisions respecting the duty of each district clerk to report to the county clerk and the duty of the county clerk to "make a summary" of all these reports (in his county) and forward it to the State Superintendent. This summary must show the total number of days' attendance for the county and the number of teachers employed in the county and the time for which they are employed and the amount of their respective salaries, and other information. It is the duty of the State Superintendent to certify to the State Auditor and to the several county clerks the amounts apportioned and their source. It then becomes the duty of each county clerk, "according to the same provisions hereinbefore stated, for determining the apportionment of the state school fund by the State Superintendent of Public

Schools'' to proceed ''to apportion the state school fund for their respective counties; and no district, city or town which shall have failed to make this report to the county clerk, hereinbefore required, shall be entitled to receive any portion of the public school funds.'' Then follow numerous provisions which do not seem to bear upon the question in this case. The section, in its present form, first appeared in the Act of April 18, 1911, and took effect September 1, 1911. Section 11181, Revised Statutes 1919, was, in substance, first enacted in 1891, and reads as follows:

''Sec. 11181. *Correction of error in apportionment— distribution of funds.* The state superintendent of public schools is hereby authorized to correct any error made in the apportionment of the public school funds among the various counties of this State out of the public school fund of the year next following the date when such mistake was made, and the amount set apart to any county for the purpose of correcting an error shall be by him certified to the state auditor and to the county clerk, and the state auditor shall draw a warrant on the state treasurer for the amount so certified in favor of the treasurer of said county, and the county clerk shall apportion said funds to the various districts in said county as the funds of the year in which said error occurred, and the county treasurer may pay outstanding warrants for teachers' wages issued during the school year in which said error occurred, not to exceed the correction made.''

The question submitted by the parties is whether the facts stated disclose an error which falls within the provisions of Section 11181.

I. Preliminary: The power given by Section 11181 to the State Superintendent of Public Schools is couched in words vesting him with ''authority'' to correct certain

**Authority to Correct Errors.** errors in apportionment. With respect to such errors as fall within the section, words of that character in a statute like this are to be construed as mandatory, since ''public interests

and rights are concerned.'' [Newburgh Turnpike v. Miller, 5 Johns Ch. 100; 25 R. C. L. p. 770.]

II. The conceded facts justify, if they do not require, a finding that the district clerk's report was received by the county clerk. [State Hospital v. Cole Co., 272 Mo. l. c. 139, 140, and cases cited.] There is strength given the other facts by the presence of the return card on the envelope and the fact that the report was not returned to the district clerk. [Jensen v. McCorkell, 154 Pa. 323.] There is no countervailing evidence. In the circumstances the receipt of the report of the county clerk should be accepted in this case as a fact.

Receipt of Report.

III. The error made by the county clerk in omitting from his summary sent the State Superintendent of Schools the district report for Consolidated School District No. 9 of Bates County necessarily entered into and rendered erroneous the apportionment of the public money for the whole State. The result was that the sum to which District No. 9 would have been entitled on its report was distributed throughout Missouri. The failure to include the figures from District No. 9 increased by that much the sum apportioned to all other reporting districts, with the result that every such district *except* District No. 9 (which was entitled to all of its portion) received a part of what its report to the clerk showed to be due that district. It is obvious there was a mistake in the county clerk's summary for Bates County in omitting the report of District No. 9, and that this mistake entered into, became a part of and rendered erroneous the apportionment made by the State Superintendent. The fact that the mistake was one made by the county clerk of Bates County and was not made by the State Superintendent in no wise renders less true the statement that the error made the whole apportionment erroneous. The present indisputable fact is that District No. 9, through no fault of its

Correction of Error.

own, received none of the money to which its report and the facts entitled it, and the other reporting districts received all the money to which they were entitled and, in addition, that to which District No. 9 was entitled.

As we understand it, the suggestion is that since the State Superintendent correctly, in a mathematical sense, apportioned the public school moneys on the basis of the summaries in his office and did not himself commit the error which first left District No. 9 out of the computation, though that error, without his knowledge, necessarily entered into his apportionment, the error is not of the sort Section 11181 authorizes him to correct. The statute does not so read. It provides that the State Superintendent "is authorized to correct *any error* made in the apportionment of the public school funds among the various counties of this State out of the public school fund of the year next following the date when such mistake was made." This language is general and unqualified. This court has no power to cut down the plain meaning of general words unless there is something in them or in the act or the circumstances which renders them ambiguous. In this case such a construction would seem to contravene the policy of the section. In addition, the Legislature was at no loss for words when it undertook specifically to state what failure to report should deny a district a right to participate in the apportionment, as Section 11179 shows. The construction which gives the words of the statute their natural meaning runs counter to no provision of the statute. The rest of the reporting districts received the several hundred dollars which District No. 9 would have received had the county clerk included its report in his summary. The application of the statute to the facts here simply restores this money to District No. 9. When that is done, every district will have received what the spirit of the law intended. The case of State ex rel. v. Evans, 240 Mo. l. c. 114, holds nothing to the contrary. In that case the question was whether the State Superintendent had power under Section 11181 (then 10823) to *try* an alleged *fraud* in enumeration, render judgment, issue execution and

·satisfy the judgment in his office. As the court said: "This statute has no reference to such troubles as are now before us." The remark that the section "only authorizes him to correct his own mistakes" was made in connection with the solution of the question whether he could entertain proceedings to set aside an enumeration on the ground that it was fraudulent. The court was not concerned with the particular power granted to correct errors, but merely with the question whether a power to correct errors, whosesoever they might be, includes a power to proceed, in his office, against a district for fraud, convict it thereof and inflict punishment therefor. That case has nothing to do with the question in this case. This disposes of all the questions raised. The State Superintendent should make the correction sought.

    The alternative writ is made peremptory. All concur.