THE STATE EX REL. J. L. ROBERTSON ET AL., BOARD OF EDUCATION OF BLODGETT CONSOLIDATED SCHOOL DISTRICT and BLODGETT CONSOLIDATED SCHOOL DISTRICT OF SCOTT COUNTY v. CHARLES A. LEE, State Superintendent of Public Schools.

Court en Banc, October 8, 1926.

**CONSOLIDATED SCHOOL: State Aid: Necessary Application.** If the application by a consolidated school district for state aid contains all the necessary elements prescribed by the statute (Laws 1925, p. 330: Sec. 11264, R. S. 1919), it is the duty of the State Superintendent of Public Schools to apportion to the district the amount of state aid to which it is entitled, even though the application is made under and requests the less amount allowed by a preceding statute; but he cannot apportion to the district the increased amount authorized by said statute (Sec. 11264, R. S. 1919) unless the application sets forth all the elements and conditions prescribed by it as necessary to entitle a district to the authorized state aid. If the application does not show the average daily attendance during the preceding year, or that the amount of the district's own money from all sources was insufficient to enable the district to expend fifty dollars per pupil in average daily attendance, there is not sufficient showing to enable the Superintendent to determine that the district is entitled to the amount of state aid authorized by said statute, and without such data he is not authorized to apportion to the district the amount of money to which it would be entitled under such statute had it filed with him an application showing that all the conditions prescribed by the statute are present.

---

Corpus Juris-Cyc. References: **Mandamus**, 38 C. J., Section 631, p. 902, n. 18. **Schools and School Districts**, 35 Cyc., p. 822, n. 3.

Mandamus.

PRELIMINARY RULE DISCHARGED.

*M. E. Montgomery* and *Irwin & Dunn* for relators.

(1)   All high school maintenance aid to all consolidated school districts for the school term of 1925-6 was governed exclusively by Sec. 11264, R. S. 1919, as amended by Act of 1925, p. 330.   (2)   The State Superintendent is required to correct any error occurring in the annual apportionment of the preceding year. (Sec. 11181, R. S. 1919; State ex rel. v. Lee, 262 S. W. 344; State v. Ross, 143 N. E. (Ohio) 34.

*North T. Gentry,* Attorney-General, and *Claude E. Curtis,* Special Assistant Attorney-General, for respondent.

(1)   Relator received the amount of aid due it according to the application and report filed by it.   The State Superintendent in making apportionment of state money for school aid, must do so on the information received in reports made to him and upon applications for said aid.   R. S. 1919, secs. 11179, 11295, 11264; Laws 1925, p. 330; State ex rel. v. School District, 90 Mo. 395.   (2)   The statute provides that the clerk of each school district must file a report with the county clerk and the county clerk must send the report to the State Superintendent of Schools; and further that if the county clerk fails to make such report and file such application with the State Superintendent of Schools, the school district shall not receive any portion of the public funds.   R. S. 1919, sec. 11179.   (3)   Relator made a report and applied for aid under Section 11295, and respondent has no power to re-open the matter and hear evidence to determine the real *status* of relator in order to see if it were entitled to receive aid under some other section than Section 11295.   State ex rel. v. Evans, 240 Mo. 95; State ex rel. v. Lee, 303 Mo. 641.

OTTO, J.—This is an original proceeding in mandamus.   Prior to the issuance of our alternative writ the respondent entered his voluntary appearance, waiving the issuance and service of the writ, accepted relators' petition as and for such writ, and filed his return thereto.   To respondent's return relators filed a demurrer which may be treated as fulfilling the office of a motion for judgment on the pleadings.   The return admits all the material facts alleged in the petition.

It is alleged in the petition and admitted in the return that Blodgett Consolidated School District No. 35 during the school year of 1925-26 maintained an approved high school of the first class; that it voted and levied a tax of $1 on the $100 valuation for the pay of teachers and incidental expenses; that the money derived from said tax levy, together with the cash on hand and the income received

from county, township and state funds, produced a total of $12,601.05; that said sum was less than fifty dollars per pupil in average daily attendance during the preceding year, and that the average daily attendance of the preceding year was 302 children, which multiplied by fifty would show the district to be entitled to expend, under Section 11264 of the 1925 Act, the sum of $15,000 for school purposes.

It is set forth in said petition that because of some misapprehension or doubt on the part of the authorities of said district as to whether or not the district was legally entitled to receive state aid under Section 11264, page 330-332, Laws of Missouri, 1925, no formal application was made under the provisions of that section, nor attempted to be made; but that the district not wanting to take chances on losing out entirely on the apportionment of state funds, did apply for and receive state aid under Section 11295, Revised Statutes 1919, which latter section afforded an amount materially less than could have been obtained if the application had been made under Section 11264, supra. The aid received by the district upon its application was $200, and relators do not question the correctness of this amount under the provisions of said Section 11295, Revised Statutes 1919, upon which the application was based. Relators contend, however, that because of a misunderstanding of the law or a doubt as to the district's rights under the law at the time of making application in 1925, state aid should be awarded at this time in the sum of $2,498.95, on the ground that an *error in apportionment* was made and they are willing for the amount received in 1925 to be credited on the award which they now ask to be made.

Respondent concedes that the aid now claimed by relators might have been legitimately granted had the same been applied for, but insists that by applying for and receiving aid under the provisions of Section 11295, supra, relators elected the form of aid they would take, and therefore are precluded from the provisions of Section 11264, supra. In other words, the position of respondent is that there was no mistake in making the apportionment in 1925, that the aid granted was in exact accordance with relators' application, and that respondent cannot now be required to reopen the case and make a new apportionment merely because relators may have misconceived the statute under which they might have obtained a larger amount for the district.

Under these circumstances the question for this court to determine is whether or not the act of the school district in purposely applying for aid under Section 11295, supra, when it could have applied for and received aid under Section 11264, supra, but through a misapprehension of the law did not do so, constitutes such an error in making the apportionment as could be afterwards corrected.

The authority for correcting errors in the apportionment of the school funds is found in Section 11181, Revised Statutes 1919, which reads as follows: ''The State Superintendent of Public Schools is hereby authorized to correct any error made in the apportionment of the public school funds among the various counties of this State out of the public school fund of the year next following the date when such mistake was made, and the amount set apart to any county for the purpose of correcting an error shall be by him certified to the State Auditor and to the county clerk, and the State Auditor shall draw a warrant on the State Treasurer for the amount so certified in favor of the treasurer of said county, and the county clerk shall apportion said funds to the various districts in said county as the funds of the year in which said error occurred, and the county treasurer may pay outstanding warrants for teachers' wages issued during the school year in which said error occurred, not to exceed the correction made.''

It was obviously the purpose of the Legislature in repealing Section 11264, Revised Statutes 1919, and re-enacting the same in a new form, Laws 1925, page 330, to guarantee consolidated school districts a sufficient amount of state aid to enable them to expend fifty dollars per child per year in average daily attendance, where such districts bring themselves within the requirements of said act and do not have sufficient funds of their own to enable them to make such expenditures.

The requirements to be met by a consolidated district as set forth in the 1925 Act are as follows:

First, It must have voted one hundred cents on the $100 assessed valuation for the pay of teachers and incidental expenses.

Second, It must have maintained an approved high school of at least the third class.

Third, It must have given an approved course of at least one year in agriculture.

If after having met the foregoing requirements it should be able to show that the money derived from the tax levy so made, when supplemented by the amount of cash on hand and by the estimated income from county, township and state funds, is insufficient to enable the expenditure of fifty dollars per child based on the average daily attendance during the preceding year, then the district stands entitled to receive state aid in an amount equal to the difference between what it is entitled to expend and the amount which it actually has of its own funds.

Prior to June 30, 1925, the authorities of Blodgett Consolidated School District prepared and transmitted to the County Clerk of Scott County an application for state aid. Said application, as stated before, was purposely based on Section 11295, supra, a statute authorizing limited aid to town, city and consolidated districts upon

application therefor. That section requires the following showing to be made in order to entitle the district to the aid therein provided for, to-wit:

(1)  The district shall show its assessed valuation;

(2)  That it is organized as a town, city or consolidated district, as the case may be, with six directors;

(3)  That it has levied the maximum provided by law for teach-·ers and incidental expenses;

(4)  That it maintains an approved high school and employs a competent principal to teach said high school and supervise the elementary school;

(5)  That it pays its teachers at least $40 per month;

(6)  That it admits non-resident pupils to its high school at a reasonable tuition fee; .

(7)  That during the preceding year the daily attendance in the high school averaged at least fifteen pupils;

(8)  That it gives an approved course of at least one year in agriculture. ·

It will be seen that the application required under Section 11295, supra, embraces generally the conditions set forth in Section 11264 of the 1925 Act, and more. The district here involved had levied the maximum tax provided by law for the pay of teachers and incidental expenses, it was maintaining an approved high school of at least the third class and it was giving an approved course of at least one year in agriculture.

There is nothing before this court, however, to show that the data submitted by said school district and on which its state aid was awarded, set forth the fact that the average daily attendance during the preceding year was 302 children. Neither is there anything to indicate that the data submitted showed that the amount of the district's own money from all sources was insufficient to enable the expenditure of fifty dollars per child based on the average daily attendance. The showing made did enable the State Superintendent of Schools to determine that the district was entitled (and this was the showing intended) to receive state aid under Section 11295, Revised Statutes 1919, and the aid was awarded accordingly.

Section 11264, supra, as re-enacted in 1925, makes it the duty of the State Superintendent of Schools, in the event that a consolidated district comes within the act, to apportion to such district a sum sufficient to enable it to expend fifty dollars per child in average daily attendance, when, but only when, the aggregate of its own moneys from all sources is insufficient to enable such expenditure.

The right of a consolidated school district to receive the aid provided for by the 1925 Act does not rest altogether upon the form of the application, but it does depend upon the fact of application

(Section 11179, R. S. 1919). The application is only the means used for the purpose of advising the State Superintendent whether the district is entitled to aid and of the exact amount it should have. If a district should set forth in an application *all the elements necessary* to advise the State Superintendent of Schools of these facts so he would be able to determine not only the right, but also the particular amount the district was entitled to receive, then unquestionably it would become the duty of the Superintendent to grant the aid accordingly, even though the formal application might show it was based on another statute. That would be such a mistake as could be corrected under the provisions of Section 11181, Revised Statutes 1919, supra.

It cannot be said in this case, however, that the application made by the school authorities in 1925 contained *all the elements necessary* to advise the respondent, the State Superintendent of Schools, with respect to any rights of the district under Section 11264, Laws 1925. It covered Section 11295, Revised Statutes 1919, and no one disputes the fact that relators intended it to do so at that time, being in doubt, as they say, as to the rights of the district under said Section 11264, and knowing they would take no chances by placing themselves under Section 11295. This being true there was no mistake in the apportionment. The apportionment was made in exact accordance with the application and respondent was right in declining to re-open the case.

The cases of State ex rel. v. Ross, 143 N. E. (Ohio) 34, and State ex rel. v. Lee, 303 Mo. 641, are not authority for the contention made by the relators, as may be seen on a careful reading of these cases.

In the Ross case there was a proper application made, but not made within the time named in the statute. The court held that since the application was in fact made, though not timely, the district was nevertheless entitled to the relief it asked.

In State ex rel. v. Lee, 303 Mo. 641, cited above, this court held that the proof showed that an application for state aid was prepared and mailed to the county clerk, but through some cause not attributed to the district officials was lost, so it never reached the State Superintendent of Schools. Through this mischance the district was left entirely out of the apportionment, and we ruled that inasmuch as the district had made its application it was not to be denied the aid merely because the data submitted was lost in transmission.

In the case at bar it is *frankly* stated by the relators in their petition that no application was made or attempted to be made under Section 11264, that because the district authorities were in doubt of the rights of the district to receive the aid provided for in Section 11264, they themselves framed the application upon Section 11295 and received the aid thereby provided for.

The lawmakers were not wanting in words, as this court said in State ex rel v. Lee, 303 Mo. 641, l. c. 647, when they specified in Section 11179, Revised Statutes 1919, the thing which would prevent the district from participating in the apportionment of state school funds, that section containing the following language: ". . . and no district, city or town which shall have failed to make this report to the county clerk hereinbefore required shall be entitled to receive any portion of the public funds. . . ."

The relators not having made any attempt to show that this school district was within the provisions of Section 11264, Laws 1925, and no error being pointed out in the apportionment made upon the application as made, we hold that there is nothing for correction and that relators are without right to the writ they seek. The writ is therefore denied. It is so ordered. All concur, except *Graves, J.,* absent.