STATE ex rel. SCHOOL DISTRICT OF the CITY OF INDEPENDENCE, et al., Respondents,

v.

Samuel C. JONES, et al., Appellants.

No. 63781.

Supreme Court of Missouri, En Banc.

May 31, 1983.

John Ashcroft, Atty. Gen., Thomas Schwarz, Madeleine O. Birmingham, Asst. Attys. Gen., Jefferson City, for appellants.

Shirley Ward Keeler, Edward T. Matheny, Jr., Kansas City, Norman Humphrey, Jr., Independence, Jeffrey L. Lucas, Kansas City, Julius M. Oswald, Blue Springs, Harvey M. Tettlebaum, Jefferson City, Donald Earnshaw, Lee's Summit, for respondents.

RENDLEN, Chief Justice.

██ Defendants appeal the circuit court judgment declaring the State Tax Commission is obligated under § 163.011(4), RSMo.,[1] to consider real and personal property separately in determining the "percent of true value" at which property in each

---

1. Unless otherwise indicated, all statutory references are to RSMo.1978.

Plaintiff in this case is the State of Missouri at relation of the School District of the City of Independence, Blue Springs Reorganized School District R–4, Fort Osage Reorganized School District R–1, Grandview Consolidated School District No. 4, Hickman Mills Consolidated School District C–1, School District of Kansas City, Missouri, Lee's Summit Reorganized School District No. 7, Oak Grove Reorganized School District R–6 and Raytown Consolidated School District C–2. Relator school districts are referred to herein as plaintiffs.

Respondents below ("defendants" herein) are Samuel C. Jones, Stephen C. Snyder and Gary D. Wiggins as Members of and Constituting the State Tax Commission of Missouri, and Arthur L. Mallory, as Commissioner of Education of Missouri, and The Missouri State Board of Education, and Delmar A. Cobble, Grover A. Gamm, Jimmy Robertson, Donald W. Shelton, Dale Thompson, Robert L. Welling, and Irving A. Williamson as Members of and Constituting the Missouri State Board of Education, and The Missouri State Department of Elementary and Secondary Education.

county is assessed and to certify to the State Board of Education assessment ratios applicable only to classes of property studied by the Commission. Defendants contend the trial court erred in (1) overruling their motions to dismiss plaintiff's petition for lack of standing, (2) declaring that § 163.011(4) requires the State Tax Commission and State Department of Elementary and Secondary Education (hereinafter State Department of Education) to consider real and tangible personal property separately in determining "percent of true value," and (3) ordering defendants to pay costs. As § 163.011(4) directly involves disbursement of state funds, we are called upon to construe the state revenue laws and the case falls within our exclusive appellate jurisdiction, *State ex rel. Herbert v. Downey,* 572 S.W.2d 473, 474 (Mo. banc 1978); *Regal-Tinneys Grove Special Road District v. Fields,* 552 S.W.2d 719, 720–21 (Mo. banc 1977); *State ex rel. Gold v. Dunne,* 421 S.W.2d 268, 269–70 (Mo.1967).

■ Review of this court-tried case is conducted under Rule 73.01, and the judgment will be sustained unless the record reveals no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). As no objection is raised to the Findings of the Special Master adopted by the trial court, the facts are summarized therefrom.

Plaintiffs are nine Jackson County school districts which, in December, 1980, were notified by the State Tax Commission that the "percent of true value" to be certified for Jackson County and used in the 1981 school foundation formula was 15.2%. The school foundation formula, set forth in § 163.031[2] is the statutory mechanism for distributing appropriated state funds to Missouri school districts. Via the formula, more state money is directed to less wealthy school districts in an effort to provide each school district as many dollars per child as the 85th or 86th or 87th percentile in the state. One factor in the formula is the "equalized assessed valuation of the property of ... [each] school district," as defined in § 163.011(4).[3] The "equalized assessed

2. Section 163.031, contains a complex formula for distributing state funds to school districts. Those portions of the formula pertinent to this decision are as follows:

163.031. 1. School districts which meet the requirements of section 163.021 shall be entitled to a minimum guarantee computed as follows: An amount determined by multiplying the number of eligible pupils by seventy-five percent of the state-expenditure factor, plus an amount determined by multiplying the number of qualified aid to dependent children recipients and orphans by twenty-five percent and multiplying the product thereof by seventy-five percent of the state-expenditure factor.
2. From the minimum guarantee for each district there shall be deducted an amount derived by multiplying fifty-seven percent of the pupil-weighted levy as adjusted by the district income factor by each one hundred dollars of the equalized assessed valuation of the property in the district the preceding year. Also, there shall be deducted fifty-seven percent of the amount received for school purposes from fines, forfeitures, escheats and intangible taxes.
3. To the amount calculated in subsections 1 and 2 of this section shall be added an amount to which a district is eligible under the guaranteed-tax-base provision which

shall be calculated as follows: Multiply the difference between the guaranteed tax base less the equalized assessed valuation per eligible pupil of the school district for the last year divided by one hundred times the number of eligible pupils, times the difference obtained by subtracting fifty-seven percent of the equalized pupil-weighted levy as adjusted by the district income factor from the equalized operating levy for the district.

. . . . .

3. 163.011. As used in this chapter unless the context requires otherwise:

. . . .

(4) "Equalized assessed valuation of the property of a school district" shall be determined by multiplying the assessed valuation times the percent of true value specified in section 137.115, RSMo, and dividing by either the percent of true value as determined by the state tax commission on or before February first preceding the fiscal year in which the evaluation will be effective or the average percent of true value for the highest three of the last four years as determined and certified by the state tax commission, whichever is greater. To the equalized locally assessed valuation of each district shall be added the assessed valuation of railroad and utility distributable property as determined by dividing

valuation" of property in a school district is obtained, in part, by multiplying the locally determined assessed valuation of real and tangible personal property in the district times 33⅓ percent (the percent of true value specified in § 137.115) and then "dividing by either the percent of true value as determined by the state tax commission ... or the average percent of true value for the highest three of the last four years as determined and certified by the state tax commission, whichever is greater," § 163.-011(4). The "percent of true value as determined by the state tax commission" is the percent of true value in money at which the State Tax Commission determines property in a particular county (and hence school districts within that county) is actually assessed. For example, the 1980 "percent of true value" certified for Jackson County was 15.2 percent, as compared to the 33⅓ percent at which property in the county is required by statute to be assessed. Because locally-determined levels of valuation and real and tangible personal property vary from county to county, use in the formula of "equalized" assessed valuations assures a somewhat uniform measurement of school district wealth.

In 1980, as has long been its practice, the State Tax Commission determined the "percent of true value" at which property in Missouri counties was assessed solely from samples of real property tracts. The procedure is described in Chapter 8 of an Assessor's Manual developed by the Commission: Every year, a random sample of real property tracts in each county is appraised by representatives of the State Tax Commission; from a comparison of the assessed valuation of the sample tracts to their appraised market value, a "percent of true value" is calculated for the county and certified to the State Board of Education.

When notified in 1980, of the Commission's intent to certify a ratio of 15.2 percent for Jackson County, plaintiffs objected and asked the Commission and State Department of Education to calculate an assessment ratio or ratios reflecting assessment levels of personal as well as real property in the county. Defendants' refusal prompted this suit.

After petition and answer were filed, the trial court appointed a Special Master to hear the evidence and submit findings, conclusions and recommendations. At trial, plaintiffs introduced evidence that in Jackson County tangible personal property is assessed at a higher percent of its value than real property. The director of the Jackson County property division, equivalent to the county collector and assessor, testified that the last equalization or reassessment of real property in Jackson County occurred in 1939.[4] Unless a tract of real property has come to the division's attention by reason of new construction, remodeling, demolition, etc., the current assessment is the same as that made in 1939 or 1940. Tangible personal property, in contrast, is valued every year in Jackson County. Each January, personal property declaration forms are mailed to all businesses and individuals. These are self-assessment forms on which personal property is itemized by the taxpayer. Items of business personal property, such as machinery, equipment, vehicles and inventory, are listed on the basis of acquisition. Taxpayers supply values, which are presumed to be 100 percent of true value at the time. After an audit procedure, the assessor applies a 33⅓ percent ratio to arrive at the assessed valuation. If a business neglects to return the form, the reasonable value of that business's property is estimated from prior returns, norms for the type of business and

the total assessed valuation of the distributable property within each county in which the district has territory by the total number of resident pupils enrolled in the public schools on the last Wednesday in September in each county in which the district has territory and multiplying the quotient thus obtained by the number of resident pupils enrolled in the

public schools on the last Wednesday in September within that portion of each district lying wholly or partially within the county;

4. There was testimony that although Jackson County has been engaged in an equalization program since 1975, implementation has been delayed until 1984.

inflatinary trends. The estimated value is considered the true value and 33⅓ of the "true value" is recorded as the assessed valuation. In addition, the personal property of one sixth to one seventh of all businesses, merchants and manufacturers in Jackson County is physically examined each year in the field. Each year, also, the division sends declaration forms to individuals listing the items of individual personal property on the division's books from previous years. If the listing is correct, the taxpayer need not do anything. If it is erroneous, the taxpayer is asked to correct and return the form. Assessed valuations published by the State Tax Commission or the city assessor of Kansas City or valuations determined by the property tax division itself are assigned to items of individual personal property. There was testimony that 80 to 90 percent of the personal property in the state is located in four or five counties and personal property assessments account for 40 to 45 percent of Jackson County's tax base.

For their part, defendants introduced evidence that conducting a statistically valid ratio study of personal property assessments would be impractical if not impossible. Locating a valid sample to examine and appraise would be a major obstacle. Unlike real property, which is stationary and reported in the county of its location, personal property is mobile and reported in the county where its owner lives.

In 1975, State Auditor George Lehr conducted a tax ratio study as part of an audit of the State Tax Commission and determined that the ratio of assessed value to true value for real property varied widely throughout the state. His report caused a stir and in 1977 a special subcommittee was established in the State House of Representatives to study the situation. The subcommittee held hearings during which commission procedures for conducting ratio studies of real property were described in detail. Thereafter, the tax commission acting with the subcommittee and House and Senate Appropriations Committees developed the procedures used in today's ratio studies of real property assessments. In order for

these procedures to be utilized immediately, the legislature in 1978 adopted § 163.033, which required recertification of ratios that year.

After hearing this evidence, the Special Master submitted Findings, Conclusions and Recommendations. The trial court adopted the Master's Findings and Conclusions and entered judgment, ruling plaintiffs had standing to maintain the action for declaratory relief and injunction and declaring as follows:

... [T]he Tax Commission is obligated by § 163.011(4) to certify a ratio or ratios for equalization of assessments to which the Tax Commission by its study has determined that it or they are applicable. It is obligated to consider real property and personal property separately. Under the statute the Commission could make separate ratio studies for real and for personal property and then arrive at a composite ratio for equalizing real and personal property assessments in the school district or it could certify separate ratios for equalizing real and personal property assessments in the school district. Either would be permissible under § 163.011(4). If the Commission makes no study with reference to personal property and has no basis for arriving at a ratio of assessment for personal property in the school district which is different than the 33⅓ percent required by § 137.-115, then, in certifying its ratio which involves its study of real property assessments, it should advise the State Department of Education that its ratio applies only to real estate assessments and that it is not supplying any ratio to be applied to tangible personal property assessments.

... After receiving a ratio or ratios, determined as set out above, the State Department of Education is obligated to apply those ratios accordingly in allocating the state school foundation funds among local school districts. In the absence of a separate ratio certified as applicable to personal property assessments or a composite ratio certified as applicable to both real and personal property

local assessments, the State Department of Education should utilize personal property assessments as reported for each school district in making its allocation of funds under § 163.031 under such circumstances. The reported personal property assessment would be the equalized assessed valuation of personal property in the district for that purpose.

The court also ruled that a declaratory judgment construing §§ 163.011(4) and 163.031 and declaring the rights and obligations of the parties thereunder was an adequate remedy for plaintiffs and they were not entitled to a writ of mandamus. Plaintiff's request for a mandatory injunction was denied "at this time," and costs of the action were assessed against defendants. Defendants' points of error are considered in turn.

### I

Defendants contend first that plaintiffs lack standing to seek review of the State Tax Commission's 1981 determination and certification of a 15.2 "percent of true value" for Jackson County. They cite *Kansas City v. Reed,* 546 S.W.2d 727, 731 (Mo.App. 1977), as authority for the proposition that in the absence of express statutory authority, no appeal or other review of administrative decisions is generally provided for political subdivisions of this state. Because there is no express statutory authorization for school districts to secure judicial review of State Tax Commission "percent of true value" certifications, defendants urge a determination that the trial court erred in overruling their motion to dismiss.

■ Plaintiffs deny they are challenging the State Tax Commission's 1981 certification and claim to seek declaratory relief

under § 527.020 [5] or § 536.050 [6] from the "policy, procedure or rule" pursuant to which such determinations are made. As questions of statutory construction arising under §§ 163.011 and 163.031 are clearly involved, declaratory relief, if available to plaintiffs, is appropriate under § 527.020.[7]

We also conclude that plaintiffs did not seek, and have not in this proceeding received, judicial review of the 1981 or any past certification. Nowhere in plaintiffs' amended petition did they challenge the 1981 certification of a 15.2 "percent of true value" for Jackson County or utilization of such percent by the State Board of Education in the 1981 school foundation formula. Neither was there reference in the judgment to any past certification or use of such certification by these agencies. The case consists of a prayer for judgment declaring the future obligations of the State Tax Commission and State Department of Education under §§ 163.011(4) and 163.031, and we are asked to determine whether plaintiff school districts have standing to seek a judgment construing §§ 163.011(4) and 163.031 as they may be applied to plaintiffs in the future.

In *Regal-Tinneys Grove Special Road District v. Fields,* 552 S.W.2d 719 (Mo. banc 1977), this Court addressed the question whether a special road district had standing to obtain a declaratory judgment and summarized requisites as follows:

A declaratory judgment action provides an appropriate method of determining controversies concerning the construction of statutes and powers and duties of governmental agencies thereunder, provided the court is presented with a justiciable controversy, ripe for determination brought by someone with standing by

thereof, and such suits may be maintained against agencies whether or not the plaintiff has first requested the agency to pass upon the question presented. . . . .

5. 527.020. Any person ... whose rights, status or other legal relations are affected by a statute, .. may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder.

6. 536.050. 1. The power of the courts of this state to render declaratory judgments shall extend to declaratory judgments respecting the validity of rules, or of threatened applications

7. In this connection, we find it unnecessary to determine whether the State Tax Commission procedure for determining "percent of true value," as described in Chapter 8 of its Assessor's Manual, constitutes a "rule" within the meaning of § 536.050.

reason of having a legally protectible interest at stake, in a case wherein a judgment conclusive in character which settles the issues involved may be entered. *Id.* at 722.

There is no doubt a controversy exists between plaintiffs and defendants as to whether the State Tax Commission is permitted by law to certify a "percent of true value" applicable to a class of property it has not studied and whether the State Department of Education is permitted by law to utilize such a "percent" in calculating the equalized assessed valuation used in the school foundation formula. The controversy is justiciable, of a type often determined by courts. Absent a court judgment directing to the contrary, defendants manifest an intent to continue the challenged procedures, procedures which, due to their nature and imminent application, are ripe for review. Defendants do not claim judgment on this matter would be inconclusive or fail to settle the issues or that plaintiffs have no interest at stake here. Defendants assert only that plaintiffs' interest is not legally protectible, that they have no cause of action. This assertion is not correct.

■ Although Art. V, § 18 of the Missouri Constitution provides for direct judicial review of final judicial and quasi judicial agency decisions, findings, rules and orders that "affect private rights," Art. V, § 18 neither prohibits the legislature from providing for judicial review of "public rights" upon the initiative of an appropriate public body, *In re St. Joseph Lead Co. v. State Tax Commission,* 352 S.W.2d 656, 661 (Mo.1961), nor abrogates the common law and equitable remedies available to political subdivisions. School districts are bodies corporate, instrumentalities of the state established by statute to facilitate effectual discharge of the General Assembly's constitutional mandate to "establish and maintain free public schools for the gratuitous instruction of all persons in this state within ages not. in excess of twentyone years ...." Art. IX, § 1(a), Mo. Const. (1945, as amended August 3, 1976); *School District of Oakland v. School District of Joplin,* 340

Mo. 779, 102 S.W.2d 909, 910 (Mo.1937). While school districts are not sovereigns, but creatures of the legislature whose only powers are those expressly granted by or necessarily implied from statute, the capacity of a school district to sue and its authority to prosecute actions required to protect and preserve school funds and property is necessarily implied from the district's duty to maintain schools and conduct instruction within its boundaries. Multitudinous are the common law and equitable actions that have been initiated by school districts without express statutory authorization and determined on the merits. A partial list of such cases decided by this Court includes: *Eminence R–1 School District v. Hodge,* 635 S.W.2d 10 (Mo.1982) (suit for injunction and declaratory judgment as to whether county court was required by statute to distribute to plaintiff school district a portion of forest reserve funds); *State ex rel. Fort Zumwalt School District v. Dickherber,* 576 S.W.2d 532 (Mo. banc 1979) (mandamus to compel county auditor to countersign checks for payment of interest on school tax moneys collected by county); *State ex rel. Reorganized School District R–9 v. Windes,* 513 S.W.2d 385 (Mo.1974) (certiorari from determination of arbitration board on apportionment of property); *School District of Mexico v. Maple Grove School District No. 56,* 359 S.W.2d 743 (Mo.1962) (action to recover from adjoining school district tuition payments allegedly due under statute); *Bloomfield Reorganized School District No. R–14 v. Stites,* 336 S.W.2d 95 (Mo.1960) (breach of contract); *Southern Reynolds County School District R–2 v. Callahan,* 313 S.W.2d 35 (Mo.1958) (ejectment and establishment of title by adverse possession); *School District No. 24 v. Neaf,* 347 Mo. 700, 148 S.W.2d 554 (Mo.1941) (injunction to restrain County Assessor from treating certain property as personalty rather than realty for tax purposes); *School District of Kansas City v. Smith,* 342 Mo. 21, 111 S.W.2d 167 (Mo.1937) (declaratory judgment as to whether 1935 sales tax act imposed tax on transactions to which school district was a party); *School District of Oakland v. School District of Joplin,* 340

Mo. 779, 102 S.W.2d 909 (Mo.1937) (action to quiet and determine title and for ejectment, damages and monthly rents and profits).

From the cases, it is apparent the rule in this state has been that absent legislation to the contrary and so long as in furtherance of its duties a school district is empowered to initiate any action that would be available to a private individual in the same circumstances. This action is indisputably in furtherance of plaintiffs' duties, and were plaintiffs private individuals, it would be said they have a legally protectible interest at stake. Plaintiff school districts are direct beneficiaries of the statutory right to certain portions of appropriate state school funds. Plaintiffs allege defendants' unlawful procedures for calculating their portions of these funds will result in distribution to plaintiffs of less state money than they have a statutory right to receive. To the extent defendants' actions are administrative, i.e. nondiscretionary in nature, mandamus would be a possible remedy. To the extent judicial or quasi judicial, an erroneous distribution might be challenged by certiorari. The validity or threatened application of a legislative determination would be subject to review under § 536.050. At the very least, private individuals in the position of plaintiffs would have standing to seek an injunction. As no action or proceeding is open to dismissal on general objection that a declaratory judgment or decree is prayed, § 527.010, plaintiff school districts have standing to initiate this action absent a manifestation of legislative intent to preclude judicial review in this instance. Analysis of the school fund apportionment statutes evinces no such intent.

State school funds are distributed each year through a finely-timed statutory scheme. On or before February first, the State Tax Commission certifies to the State Department of Education the "percent of true value" at which the property of each county is assessed, § 163.011(4). Between June fifteenth and June thirtieth, the secretary of each school district submits to the State Department of Education a report containing all necessary data for calculating the amounts of state support the district is

to receive for the following school year, § 163.081, RSMo.Cum.Supp.1982. Upon receipt of such reports, the State Board of Education calculates the amount each school district is to receive and certifies such amount to the Commissioner of Administration for distribution in monthly installments beginning each July 1st, § 163.-081, RSMo.Cum.Supp.1982.

Section 138.395, RSMo. Cum.Supp.1982, enacted in 1980, indicates the legislature has considered the probability that school districts will, at least on occasion, question the "percent of true value" calculated by the State Tax Commission:

138.395. The state tax commission shall notify each school district of the ratio adopted for determining the equalized assessed valuation of the property of the school district for distributions of school foundation formula funds at least thirty days prior to the certification of such ratios to the department of elementary and secondary education, and shall provide the school districts an opportunity for a meeting with the commission, or a duly authorized agent thereof, on such ratios prior to such certification.

Section 163.091 provides some relief to school districts aggrieved by erroneous apportionments:

163.091. The state board of education may correct any error made in the apportionment of the state school moneys fund among the various counties of this state out of the state school moneys fund of the year next following the date when the mistake was made. The state board of education shall certify the amount set apart to any school district for the purpose of correcting any error to the commissioner of administration, and the commissioner of administration shall certify the amount so apportioned for proper payment, and the district treasurer shall credit the funds as the funds of the year in which the error occurred. If any district has received funds in excess of the amount to which it was entitled, its ap-

portionment for the next succeeding year shall be reduced accordingly.

The authority to correct school fund apportionment errors provided in a predecessor to this statute has been held mandatory. *State ex rel. Consolidated School District No. 9 v. Lee,* 303 Mo. 641, 262 S.W. 344, 345 (Mo. banc 1924).

There is support for the positions of both parties in these statutes. It can be argued that provision for judicial review by school districts would so seriously disturb the smooth functioning of an otherwise finely timed procedure for apportioning state school funds that the legislature must not have intended to permit such review. Legislative provision for a meeting between disaffected school districts and the State Tax Commission may be cited as an indication of legislative intent to preclude resort by school districts to the courts. It can also be argued that section 138.395, RSMo. Cum. Supp.1982, and § 163.091 are intended as exclusive provisions for relief of school districts aggrieved by administration of the state school foundation program.

More persuasive, however, is the fact that substantially similar statutory procedures for apportioning state school funds have been in effect for more than 100 years [8] during which time numerous legal challenges to school fund apportionments have been instigated by school districts and determined on the merits, *e.g. State ex rel. School District of Kansas City v. Young,* 519 S.W.2d 328 (Mo.App., K.C.1975) (mandamus compelling State Board of Education to exclude property in newly annexed area when calculating the assessed valuation of relator school district). *State ex rel. School District of Pattonville v. Lee,* 336 Mo. 1069, 83 S.W.2d 87 (Mo. banc 1935), *State ex rel. School District of Kansas City v. Lee,* 66 S.W.2d 524 (Mo. banc 1933), *State ex rel. School District of Kansas City v. Lee,* 66 S.W.2d 523 (Mo. banc 1933), and *State ex rel. School District of Kansas City v. Lee,* 334 Mo. 513, 66 S.W.2d 521 (Mo. banc 1933)

(mandamus compelling State Superintendent of Schools to set moneys aside for special purposes before apportioning state school funds); *State ex rel. Robertson v. Lee,* 315 Mo. 817, 287 S.W. 37 (Mo. banc 1926) (mandamus compelling distribution to school district of additional state school funds); *State ex rel. Consolidated School District No. 9 v. Lee,* 303 Mo. 641, 262 S.W. 344 (Mo. banc 1924) (mandamus compelling the State Superintendent of Schools to correct a mistake previously made in apportionment of state school funds); *State ex rel. Consolidated School District No. 1 v. Hackmann,* 302 Mo. 558, 258 S.W. 1011 (Mo. banc 1924) (mandamus compelling state auditor to draw warrants upon state treasurer for amounts due in payment of school aid the preceding year); *State ex rel. School Directors of District 117 v. School Directors of District 15,* 90 Mo. 395, 2 S.W. 420 (Mo. 1886) (mandamus by school district compelling neighboring school district to pay $93 in allegedly misdirected state school funds.

█ In the last 100 years, also, state school fund apportionment statutes have been amended many times. It is to be presumed that in enacting these revisions, the legislature was aware of the legal challenges successfully initiated by school districts under similar statutes. *State ex rel. Danforth v. Milan C–II School District,* 446 S.W.2d 768, 771 (Mo.1969) (legislature presumed familiar with settled judicial construction of old law). Under these circumstances, we believe that if the legislature had intended to change course and preclude suits such as this, it would have expressly done so.

Defendant argues that since no cause of action is created for plaintiff school districts by Art. V, § 18 of the Missouri Constitution, § 536.150, RSMo., or expressly by any other statute, none exists. Cited as controlling is *State ex rel. St. Francois County School District R–III v. Lalumondi-*

---

8. Direct predecessors to the present §§ 163.081 and 163.031 existed in the 1800's. See, *e.g.* An Act to provide for the reorganization and support of public schools, and to revise and amend

the laws relating thereto, 1870 Mo.Laws 138. The substance of current § 163.091 was enacted in 1891. 1891 Mo.Laws 203.

*er,* 518 S.W.2d 638 (Mo.1975), in which this Court held that neither Art. V, § 22 (now Art. V, § 18) nor § 536.150 established a cause of action for relator school district to challenge the alleged underassessment of privately-owned property by a county board of equalization. 518 S.W.2d at 643. Plaintiffs here however, do not claim their cause of action is created by Art. V, § 18, § 536.150, or any other statute. Rather, they seek through common-law writ or declaratory judgment and action originating in equity to avert an allegedly unlawful distribution of state school funds.[9] Section 536.150.3 expressly provides, "Nothing in this section shall be construed to ... limit the jurisdiction of any court or the scope of any remedy available in the absence of this section," [10] and as discussed above, common-law writs and declaratory judgments, some-

times coupled with injunctions, have long been recognized as appropriate remedies for school districts to obtain judicial review of similar claims.

In *Lalumondier,* we examined the comprehensive statutory scheme for assessment of property values for property tax purposes. From this statutory scheme, especially the express provision for judicial review at the request of affected property owners but not interested school districts, we inferred a legislative intent to preclude relator school district from obtaining judicial review of alleged underassessments of private property by the county board of equalization.[11] Plaintiffs, here, however, do not challenge the assessment or taxing practices in any county or dispute the interpretation of any tax statute. This is a contest between competing school districts

9. Relator in *Lalumondier,* 518 S.W.2d 638 (Mo. 1975), filed a certiorari proceeding, asserting its cause of action was created by Art. V, § 22 (now Art. V, § 18) of the Missouri Constitution or § 536.150, RSMo., not the common law. Perhaps relator there believed that as it was a stranger to the record below, no common-law action in certiorari would lie, or that as factual issues were involved, such a remedy would be inadequate. In any event, our determination that the legislature intended to preclude relator's claim would have barred its consideration.

10. The entire statute reads as follows:
536.150. 1. When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may

order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.
2. Nothing in this section shall apply to contested cases reviewable pursuant to sections 536.100 to 536.140.
3. Nothing in this section shall be construed to impair any power to take summary action lawfully vested in any such administrative officer or body, or to limit jurisdiction of any court or the scope of any remedy available in the absence of this section.

11. More specifically, it was said:
We have the view that if the General Assembly had intended to provide a review of alleged underassessments at the request of a governmental subdivision it would have so provided in Section 138.430(2) which provides for an appeal by property owners. No doubt such was originally omitted on the theory that public officials would adequately protect the interests of the state and its subdivisions and hence it was only necessary to provide an appeal for property owners who considered the valuation of their property to be excessive.
*State ex rel. St. Francois County School District R–III v. Lalumondier,* 518 S.W.2d at 643, followed in *City of Richmond Heights v. Board of Equalization,* 586 S.W.2d 338, 341–42 (Mo. banc 1979) (see also pp. 343–44).

and state authorities as to the proportion of future state school funds such districts are legally entitled to receive. As such, it involves the school fund apportionment statutes, not the property tax scheme. In the school fund apportionment statutes, we discern no legislative intent to bar school districts in plaintiffs' situation from their common law and equitable remedies.

 Public policy favoring judicial review of administrative decisions at the request of those aggrieved is firmly established in this state and extends to political subdivisions. *In re St. Joseph Lead Co. v. State Tax Commission*, 352 S.W.2d 656, 659–60 (Mo.1961). As political subdivisions imminently threatened with allegedly unlawful deprivation of their statutorily-mandated share of state school funds, plaintiffs have standing via common-law writ or action in equity, and therefore declaratory judgment, to challenge the statutory interpretation threatening such deprivation.

II

On the merits, defendants contend the legislature intended that percents of true value be determined solely from studies of real property and the trial court therefore erred in declaring that § 163.011(4) requires separate consideration of real and tangible personal property. The procedures currently utilized by the State Tax Commission in conducting ratio studies of real property, defendants point out, were developed by the Commission in conjunction with legislative committees, and following development of these procedures, the General Assembly passed § 163.033, mandating recertification of the 1977 "percent of true value ratios." [12] Defendants argue that under these circumstances the silence in § 163.033 as to the manner in which the ratio study is to be conducted indicates legislative approval of current Commission procedures. Defend-

ants also point to the difficulty of conducting valid statistical ratio studies for personal property as evidence the legislature intended percents of true value determined solely from studies of real property. Unlike personal property, defendants argue, real property can be located and accurately appraised, and assessment studies based on real property produce reliable, accurate and relatively uniform measurements of school wealth. Defendants would have us conclude there is no proof that personal property in Jackson County is actually assessed at 33⅓ percent of its true value and attributing such a "percent" in the absence of proof will result in inaccurate measurements of wealth which defeat the legislative purpose. Although defendants' arguments are substantial, we find the conclusions of the trial court more persuasive.

In defining "equalized assessed valuation of the property of a school district" in § 163.011(4), the legislature did not specify how the State Tax Commission should determine the percent of true value at which property is assessed or what property should be considered. Section 138.390, which mandates equalization of assessed valuations of property among counties, however, requires the State Tax Commission to equalize classes of property separately:

138.390. 1. Between the dates of June twentieth and the second Monday in July, 1946, and between the same dates each year thereafter, the state tax commission shall equalize the valuation of real and tangible personal property among the several counties in the state in the following manner: ... the commission shall classify all real estate situate in cities, towns, and villages, as town lots, and all other real estate as farming lands, and shall classify all tangible personal property as follows: Banking corpora-

---

12. Section 163.033 provides:

163.033. Notwithstanding the provisions of section 163.031, the average percent of true value ratios determined by the state tax commission for year 1977 and certified to the department of education in 1978 shall be disregarded and the state tax commission shall

before April 1, 1978, submit the average true value ratios to be used in lieu thereof for the year 1977 in determining the equalized assessed valuation of the property of a school district for distributions of school foundation formula funds.

tions, railroad corporations, street railroad corporations, all other corporations, horses, mares and geldings, mules, asses and jennets, neat cattle, sheep, swine, goats, domesticated small animals and all other livestock, poultry, power machinery, farm implements, other tangible personal property.

2. The commission shall equalize the valuation of each class thereof among the respective counties of the state in the following manner:

(1) It shall add to the valuation of each class of the property, real or tangible personal, of each county which it believes to be valued below its real value in money such percent as will increase the same in each case to its true value;

(2) It shall deduct from the valuation of each class of the property, real or tangible personal, of each county which it believes to be valued above its real value in money such percent as will reduce the same in each case to its true value.

■ Section 138.390 was in place for many years before the enactment of § 163.011(4), and because the legislature in the enactment of § 163.011(4) did not specify a different procedure or different list of property to be equalized it is logical to conclude the legislature intended the same separate consideration of real and tangible personal property valuations in interschool district equalizations as it expressly required in intercounty equalizations. This conclusion is consistent with § 1.020, providing that when the word "property" is used in statutes, it means real and personal property unless otherwise indicated.

■ We are not persuaded that Commissioner Snyder's testimony before legislative committees detailing Tax Commission procedures for conducting ratio studies of real property and the subsequent enactment of § 163.033 indicate legislative approval of the current practice of applying assessment "percents" determined from studies of real property to tangible personal property as well. Enactment of § 163.033 followed legislative and Tax Commission studies prompted by a report of the State Auditor that assessment levels of real property varied widely throughout the state. The Lehr study related only to real property assessments. The ratio study procedures developed by the Tax Commission and legislative committees were intended to more correctly equalize real property valuations, but in Commissioner Snyder's testimony to legislative committees it is conceded that Tax Commission procedures relating to tangible personal property were not discussed. Although it is reasonable to infer from this record that the legislature intended to improve Tax Commission procedures for equalizing valuations of real property, there is no indication the legislature was aware or intended that the eventual determinations would be applied to personal property as well.

■ Plaintiffs and defendants agree one purpose of § 163.031 is to direct more state funds to less wealthy school districts in order to equalize the amount of money available to educate each child in the state. Section 163.011(4), in providing for equalized assessed valuations, evidences legislative concern that reported valuations may not convey a true picture of local property wealth. Accordingly, one factor in each equalized assessed valuation is the percent of true value at which the State Tax Commission determines the property in each county is actually assessed. Use of this factor, along with the total assessed valuation of the district and the 33⅓ percent of true value at which property is required to be assessed under § 137.115, is intended to produce a true indication of the value of the property in each school district and hence its wealth. There was uncontradicted testimony that 80 to 90 percent of the tangible personal property in the state is located in four or five counties, and that assessments of tangible personal property constitute 40 to 45 percent of the property tax base in Jackson County. There was also uncontradicted evidence that assessment practices as to real and tangible personal property differ markedly, and the record discloses no rational relationship between assessment levels of real and tangible personal proper-

ty. While it may be the legislature delegated some discretion to the State Tax Commission in determining percents of true value, we find no delegation of authority to be arbitrary or capricious. It follows that the present practice of equalizing both real and tangible personal property on the basis of a percent of true value determined solely from local real property assessment practices does not comply with the provisions of § 163.011(4) or § 163.031. On appeal, a trial court judgment is presumed valid, and the burden is appellants to demonstrate incorrectness of the judgment. *Delaney v. Gibson,* 639 S.W.2d 601, 604 (Mo. banc 1982). Defendants have failed to demonstrate the trial court erred in declaring § 163.011(4) requires separate consideration of real and tangible personal property.

### III

Defendants' final contention, unanswered by plaintiffs, is that the trial court erred in ordering them to pay court costs. As previously noted, defendants are the members of the State Tax Commission, the State Commissioner of Education, State Department of Elementary and Secondary Education and the State Board of Education and its members. Each defendant is a state agency or official. The rule is well established that absent statutory provision court costs cannot be recovered in state courts from the State of Missouri or its agencies or officials. *E.g., Murphy v. Limpp,* 347 Mo. 249, 147 S.W.2d 420, 423 (Mo.1940). As no such statutory provision is cited, we find the court erred in assessing costs against defendants.

Accordingly, the judgment of the trial court is affirmed in part, reversed in part and remanded for action consistent with this opinion.

HIGGINS, GUNN, BILLINGS, BLACKMAR and DONNELLY, JJ., and HOUSER, Senior Judge, concur.

WELLIVER, J., not sitting.